HOMESTORE, INC., Defendant
Below, Appellant,

v.

Peter TAFEEN, Plaintiff
Below, Appellee.

No. 223,2005.

Supreme Court of Delaware.

Submitted: Oct. 12, 2005.
Decided: Nov. 17, 2005.

William D. Johnston (argued) and Dawn M. Jones, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for appellant.

William M. Lafferty, Jerry C. Harris, Jr. and Samuel T. Hirzel, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, and Marc A. Fenster (argued), Russ, August & Kabat, Los Angeles, CA, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice:

This is an appeal from a final judgment entered by the Court of Chancery in an advancement proceeding brought by the plaintiff-appellee, Peter Tafeen, against his former employer, the defendant-appellant, Homestore, Inc. The Court of Chancery issued three significant opinions in this proceeding: a decision deciding cross-motions for summary judgment; a post-trial decision holding that Tafeen was entitled to advancement; and a decision affirming, with one exception, a Special Master's Final Report regarding the reasonableness of Tafeen's advancement request for attorney's fees. Homestore challenges certain aspects of each decision in this appeal.

Homestore has raised several issues on appeal. First, it asserts that the Court of Chancery committed legal error by rejecting Homestore's laches defense as a matter of law. Second, Homestore contends that the Court of Chancery committed legal error in rejecting its official capacity ("by reason of the fact") defense as a matter of law because it alleges Tafeen's actions were motivated by personal gain. Third, Homestore submits that the Court of Chancery abused its discretion by arbitrarily restricting the scope of Homestore's unclean hands defense. Fourth, Homestore alleges that the Court of Chancery's finding that Homestore failed to meet its burden of proof with respect to two affirmative defenses was clearly erroneous. Those defenses are unclean hands and a breach of the implied covenant of good faith and fair dealing. Fifth, Homestore argues that the Court of Chancery erred in approving the Special Master's Final Report on the reasonableness of Tafeen's request for the advancement of attorney's fees.

We have carefully considered each of Homestore's contentions. We have concluded that the record supports each of the Court of Chancery's discretionary rulings, that none of its factual findings were clearly erroneous, and that all of its legal rulings were correct. Therefore, the judgment of the Court of Chancery must be affirmed.

### Facts

Homestore is a Delaware corporation that has a mandatory advancement provision in its bylaws. A few years ago, Homestore discovered some accounting irregularities that resulted in an overstatement of the company's revenues. In March 2002, it announced those findings and restated its financial statements for several periods. Thereafter, Homestore and its officers and directors were named as defendants in numerous civil actions. They also became the subjects of an administrative investigation by the Securities and Exchange Commission ("SEC") and a criminal investigation by the Department of Justice ("DOJ").

Tafeen is a former officer of Homestore. He was employed by Homestore from September 1997 through November 30, 2001, first as Vice President of Business Development and later as Executive Vice President of Business Development, Ads and Sales. Since Homestore's announcement and reinstatement of its financial statements, Tafeen has incurred and continues to incur substantial legal fees related to several investigations, civil actions, and a criminal indictment.

Section 6.1 of Homestore's bylaws provides for, among other things, indemnification of present or former officers and directors "to the fullest extent permitted by the" Delaware General Corporation Law. In addition, Section 6.2 of Homestore's bylaws contains a mandatory advancement

provision: "[t]he Corporation *shall pay* all expenses (including attorney's fees) incurred by such a director or officer in defending any such Proceeding as they are incurred in advance of its final disposition."

Tafeen sought advancement for expenses in connection with investigations by Homestore's Audit Committee, the SEC, and the DOJ, and numerous civil actions that named Tafeen as a defendant (collectively, the "Proceedings"). Tafeen also sought advancement in connection with another action filed after this litigation was commenced—captioned *Myers v. Homestore, Inc.* There is no dispute that all of the Proceedings are a covered "Proceeding" under Homestore's bylaws.

The Proceedings allege a scheme involving a series of transactions by Homestore that supposedly allowed Homestore's Finance Department to overstate Homestore's revenues. Tafeen was the head of the business development department and the challenged transactions were implemented by Tafeen's department. According to Tafeen, any role he had in implementing or overseeing the challenged transactions was in his official capacity as an officer of the corporation. Therefore, Tafeen asserts that he is a party to the Proceedings "by reason of the fact" that he was a former officer of Homestore. This assertion was challenged by Homestore. According to Homestore, Tafeen cannot satisfy the "by reason of the fact" requirements because his actions were motivated by personal greed that resulted in his receipt of $15 million.

The DOJ investigation led to an indictment of Tafeen and Homestore's former CEO in April 2005, with trial scheduled for January 2006. The securities class action and the SEC civil action have been stayed pending the outcome of the criminal trial. Three of the civil actions have been dismissed with prejudice as to Tafeen and no money was paid by Tafeen in connection with the resolution of those law suits.

In early 2002, Tafeen requested advancement of legal fees and costs incurred in defending all of the Proceedings. Homestore notified Tafeen that it would reimburse him for expenses accrued through February 2002 related to Homestore's internal investigation. Homestore initially refused to advance any expenses related to the other aspects of the Proceedings.

On April 30, 2002, Homestore sent a letter to Tafeen's counsel advising him that Homestore would advance expenses in connection with the SEC investigation and the then-pending civil litigation in which Tafeen had been named as a defendant. That advancement agreement by Homestore was contingent, however, upon Tafeen's agreement with an April 30 memorandum containing a bullet point list of conditions. None of the requirements in the April 30 memorandum were set forth in Homestore's bylaws. On the advice of his counsel, Tafeen did not return Homestore's proffered advancement documents.

On July 11, 2003, Tafeen's counsel wrote to Homestore's attorney demanding advancement once again. Enclosed with this letter was an undertaking signed by Tafeen, even though Homestore's mandatory advancement bylaw does not require an undertaking from a former officer. Homestore denied Tafeen's request for advancement.

### Summary Judgment Decisions

After Homestore refused Tafeen's request for advancement, Tafeen filed a complaint in the Court of Chancery on October 28, 2003. It contained one count for advancement of expenses (including attorneys' fees) incurred or to be incurred by

Tafeen in connection with the various matters, and one count for an award of expenses (including attorneys' fees) incurred by Tafeen in this advancement action. On November 18, 2003, Homestore filed its Answer and eleven affirmative defenses.

The parties filed cross motions for summary judgment based on the pleadings, without seeking discovery. Tafeen moved for summary judgment on the issue of liability. Homestore moved for summary judgment on its nine substantive affirmative defenses. The Court of Chancery denied both parties' motions and rejected, as a matter of law, all but one of Homestore's affirmative defenses.

With respect to the eight affirmative defenses rejected by the Court of Chancery on summary judgment, Homestore has *not* appealed *six* of them, *e.g.*, fraudulent inducement; estoppel; Homestore's assertion that advancement should be denied because, due to his alleged actions at issue in the Proceedings, Tafeen could not establish his entitlement to an advancement because it is prohibited under the Sarbanes–Oxley Act of 2002; and Homestore's "undue financial hardship" defense. The other two defenses rejected on summary judgment—which have been raised by Homestore as issues on appeal—are: Homestore's laches defense; and Homestore's "official capacity defense"—*i.e.*, that the proceedings at issue did not arise "by reason of the fact" that Tafeen is a former officer of Homestore, but arose due to Tafeen's personal greed.

The Court of Chancery's summary judgment decision also addressed what it characterized as Homestore's "novel" unclean hands defense. This defense was premised solely "on the allegation that 'Tafeen purchased an expensive home in Florida, a state that has extremely protective 'homestead' provisions against creditor claims,' in order to shelter assets, thus avoiding

repayment should Tafeen's claims ultimately be found to be nonindemnifiable." In support of that defense, Homestore submitted the information and belief affidavit of Homestore's general counsel, Michael Douglas. Based on this affidavit, the Court of Chancery concluded that "there [were] sufficient factual disputes surrounding [Homestore's] unclean hands defense . . . to warrant development of a more complete record."

On March 23, 2004, Tafeen filed a motion for reargument of the Court of Chancery's determination that a triable issue of fact existed regarding Homestore's unclean hands defense. On April 19, 2004, Homestore served discovery requests, including document requests, interrogatories, and requests for admission. Homestore's discovery requests were not limited, however, to its allegation that Tafeen purchased his home in Florida for the improper purpose of sheltering assets. Instead, Homestore sought broad discovery of Tafeen's financial records, and the financial records of his wife and children, for a four-year period.

Tafeen's counsel forwarded copies of Homestore's discovery requests to the Court of Chancery and asked them to be considered in connection with Tafeen's pending motion for reargument. The Court of Chancery denied Tafeen's motion for reargument. It also limited Homestore's discovery "to its allegation that Tafeen *purchased his home in Florida* with the intent to shelter assets from Homestore."

### Decision After Trial

During July 2004, the Court of Chancery conducted a trial. On October 27, 2004, a post-trial opinion was issued. After reviewing the evidence and the credibility of the witnesses, the Court of Chancery rejected Homestore's unclean hands defense,

holding that "[n]o credible proof adduced at trial ... demonstrate[d] by a preponderance of the evidence that Tafeen intended to shelter assets from potential creditors, whether Homestore or others." The Court of Chancery also held that Homestore failed to meet its burden of proof on its implied covenant of good faith and fair dealing defense, which was premised on the same evidence as Homestore's equitable unclean hands defense. Finally, the Court of Chancery held that "Homestore is required to advance Tafeen all reasonable attorney's fees and costs associated with the various legal proceedings in which Tafeen is involved by reason of his service as an officer of Homestore, as well as his fees incurred in prosecuting this action."

### Special Master Appointed

After the Court of Chancery held that Tafeen was entitled to advancement and to an award of "fees on fees," Homestore disputed the reasonableness of the attorneys' fees and expenses sought. On November 23, 2004, the Court of Chancery, seeing "no reasonable hope of light at the end of this tunnel," appointed a Special Master to determine the appropriate amount of fees and expenses to be awarded. The parties engaged in additional written discovery regarding the reasonableness of the fees sought.

The Special Master held an evidentiary hearing on January 4, 2005. At that hearing, the Special Master heard testimony from three witnesses—two of Tafeen's attorneys and Tafeen. Homestore chose not to present any witnesses or affirmative evidence in support of its position. On January 20, 2005, the Special Master issued his draft report, to which the parties took written exceptions. On February 2, 2005, the Special Master held a hearing on the parties' exceptions to the draft report.

On February 24, 2005, the Special Master issued a thirty-three-page Final Report, finding that Tafeen is entitled to the vast majority (96%) of the fees and expenses incurred in the liability phase of this advancement action, and 96% of the fees and expenses incurred in the "reasonableness" phase of this action. The Special Master found that the attorneys' fees sought were overwhelmingly reasonable, but recommended a reduction of $150,000 to reflect certain transition and duplication costs. The Special Master concluded some of those costs were incurred, at least in part, due to Homestore's refusal to comply with its advancement obligation. The Special Master also found that Tafeen was entitled to an award of prejudgment interest, accruing from October 28, 2003, the date the complaint in this action was filed, and post-judgment interest.

### Final Judgment

On March 11, 2005, Homestore filed its exceptions to the Special Master's Final Report, the very same exceptions previously rejected by the Special Master. On March 29, 2005, after having "independently reviewed both the record and the Special Master's Final Report," the Court of Chancery confirmed the Special Master's Final Report, with the exception of the date from which interest accrues. On April 27, 2005, the Court of Chancery entered its Final Order and Judgment ordering Homestore to pay to Tafeen: the principal sum of $3,983,986.86 for fees incurred through November 30, 2004; prejudgment and post-judgment interest at the rate of 7%, totaling $206,015.84 through April 4, 2005 and $756.40 per day thereafter; and establishing a procedure for Tafeen to obtain the advancement of his legal fees and expenses going forward. On March 26, 2005, Homestore filed its notice of appeal.

### Laches Defense Properly Rejected

In its summary judgment decision, the Court of Chancery dismissed Homestore's laches defense as a matter of law. Homestore characterizes its laches defense as "simple and straight-forward: Tafeen delayed for almost eighteen months in bringing his suit for advancement and used the interval to waste or shelter his remaining assets so as to avoid, among other things, having to pay advanced amounts back to Homestore." Specifically, Homestore argues that because Tafeen knew he had a potential advancement claim in early 2002 and waited until October 2003 to bring suit in the Court of Chancery, the doctrine of laches bars his claim because the delay allowed him to shelter assets.

■ The affirmative defense of laches generally requires the establishment of three things: first, knowledge by the claimant; second, unreasonable delay in bringing the claim; and third, prejudice to the defendant.[1] Whether or not these three elements exist is generally determined by a fact-based inquiry. Accordingly, it is seldom possible to grant a plaintiff's motion for summary judgment when a laches defense is raised.[2]

The Court of Chancery addressed the three factual elements of Homestore's laches defense. It agreed that Tafeen had knowledge of his claim for advancement. It also agreed there was a triable issue of fact on whether Tafeen's delay in bringing his claim for advancement was reasonable. The Court of Chancery concluded, however, that Homestore had not alleged facts that would support the third element of its laches defense: causation of prejudice.

According to Homestore, it was prejudiced by an increase in the difficulty of obtaining repayment should Tafeen's claims for advancement ultimately be found to be nonindemnifiable. Homestore submits that the allegation of prejudice created a triable issue of fact regarding the merits of its laches defense. The Court of Chancery ruled, however, that Tafeen's delay in filing his suit for advancement did not cause the "repayment" prejudice Homestore asserted but that alleged prejudice was caused by Tafeen's alleged sheltering of assets. Therefore, it dismissed Homestore's laches defense, as a matter of law.

The Court of Chancery's dismissal of Homestore's *laches defense* must be read in the entire context of its summary judgment decision. Earlier in that decision, the Court of Chancery ruled that Homestore was entitled to have a trial on its *unclean hands defense,* as follows: "[w]hether Tafeen did indeed intentionally engage in a sheltering of assets, which would increase the difficulty of reimbursement should his advancement claims be *found nonindemnifiable,* is a question of fact to be determined at trial." With regard to Homestore's unclean hands defense, the Court of Chancery's summary judgment decision stated unequivocally that it would not use "its equitable powers to grant advancement to Tafeen if it is shown [at trial] that Tafeen did indeed engage in a sheltering of assets with the intent to increase the difficulty of a potential reimbursement."

■ Thus, the issue of prejudice that was tried in deciding the merits of Homestore's unclean hands defense was the same prejudice Homestore alleged as the

---

1. *Fike v. Ruger,* 752 A.2d 112, 113 (Del.2000).

2. *But see, Fasciana v. Elec. Data Sys. Corp.,* 829 A.2d 160, 163 n. 2 (Del.Ch.2003) (rejecting a laches defense in an advancement case on summary judgment).

basis for its laches defense. After a full trial on that issue of prejudice, the Court of Chancery determined Homestore failed to present any credible evidence that Tafeen intended to shelter assets from potential creditors. Accordingly, even if the Court of Chancery's dismissal of the laches defense on summary judgment was improper, the error was harmless because the trial revealed that Homestore would have been unable to prove the element of prejudice it relied on in asserting the laches defense.

### Advancement and Indemnification

■ Indemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service.[3] Section 145(a) and (b) of the Delaware General Corporation Law gives corporations the power to indemnify their current and former corporate officials from expenses incurred in legal proceedings *"by reason of the fact* that the person is or was a director, officer, employee or agent of the corporation."[4] Section 145(c) allows corporate officials to defend themselves in legal proceedings "secure in the knowledge that, if vindicated, the corporation will bear the expense of litigation."[5] The right to indemnification cannot be established, however, until after the defense to legal proceedings has been "successful on the merits or otherwise."[6]

■ Advancement is an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service. Advancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings.[7] Section 145(e) allows a corporation to advance corporate officials the costs of defending an investigation or lawsuit. Section 145(e) provides, in pertinent part:

> [e]xpenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that *such person* is not entitled to be indemnified by the corporation as authorized in this section. Such expenses (including attorneys' fees) incurred by *former directors and officers or* other employees and agents may be so paid upon such terms and conditions, if any, as the *corporation* deems appropriate.[8]

Section 145(e) provides corporations with the flexibility to advance funds to *former* corporate officials, such as Tafeen, without an express undertaking. Nevertheless, when corporations, like Homestore, do not have advancement provisions that expressly require an undertaking, the ultimate right to keep payments character-

---

**3.** *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del.1998).

**4.** Del.Code Ann. tit. 8, § 145(a) & (b) (emphasis added).

**5.** *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d at 84.

**6.** Del.Code Ann. tit. 8, § 145(c).

**7.** *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, at 509–10 2005 WL 1635200, at *6–7 (Del. Supr.).

**8.** Del.Code Ann. tit. 8, § 145.

ized as an "advancement" depends upon whether the former corporate official is entitled to indemnification.[9] In addition to an express undertaking requirement, corporations may specify by bylaw or contract the terms and conditions upon which present and former corporate officials may receive advancement, *e.g.*, proof of an ability to repay or the posting of a secured bond.[10]

The advancement authority conferred by section 145(e) is permissive. Nevertheless, mandatory advancement provisions are set forth in a great many corporate charters, bylaws and indemnification agreements.[11] Homestore's bylaws provide corporate officials with a mandatory right of indemnification and an unconditional mandatory right to advancement.

Section 6.1 of Homestore's bylaws provides for mandatory indemnification of present or former officers and directors "to the fullest extent permitted by the" Delaware General Corporation Law:

> Each person who was or is . . . involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (the "Proceeding"), *by reason of the fact* that such person . . . is or was a director or officer of the Corporation . . . shall be indemnified and held harmless by the Corporation to the fullest extent permitted by the Delaware Gen-

eral Corporation Law . . . . (emphasis added).

Section 6.2 of Homestore's bylaws contains a *mandatory* and *unconditional* advancement provision:

> The Corporation *shall* pay all expenses (including attorney's fees) incurred by such a director or officer in defending any such Proceeding as they are incurred in advance of its final disposition; provided, however, that if the Delaware General Corporation Law then so requires, the payment of such expenses . . . shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it should be determined ultimately that such director or officer is not entitled to be indemnified . . . . (emphasis added).

Although the right to indemnification and advancement are correlative, they are separate and distinct legal actions.[12] The right to advancement is not dependent on the right to indemnification.[13] The right to indemnification requires "success on the merits or otherwise" in defending proceedings brought under section 145(a) or (b).[14] Section 145(e), however, expressly contemplates that corporations may confer a right to advancement that is *greater* than the right to indemnification and recognizes that advances must be repaid if it is ulti-

---

**9.** The record reflects that Tafeen voluntarily signed an undertaking that acknowledged his responsibility for repayment of advances if it was ultimately determined that he was not entitled to indemnification.

**10.** *Gentile v. SinglePoint Fin., Inc.*, 788 A.2d 111 (Del.2001) (finding that a corporation did not provide for advancement to the broadest extent possible under the law, but limited it to certain situations).

**11.** *Citadel Holding Corp. v. Roven*, 603 A.2d 818 (Del.1992).

**12.** *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, at 509, 2005 WL 1635200, at *6. *See* Karen L. Valihura & Robert J. Valihura, Jr., *Recent Developments in Indemnification and Advancement of Litigation Expenses*, 7 Del. L. Rev. 65 (2004).

**13.** *Citadel Holding Corp. v. Roven*, 603 A.2d at 822.

**14.** Del.Code Ann. tit. 8, § 145(c).

mately determined that the corporate official is not entitled to be indemnified.

■ The scope of an advancement proceeding is usually summary in nature [15] and limited to determining the issue of entitlement in accordance with the corporation's own uniquely crafted advancement provisions.[16] Homestore's advancement provision is mandatory and unconditional. Thus, the Court of Chancery was called upon to determine Tafeen's broad unconditional right to mandatory advancement in the context of a narrow proceeding.

### Official Capacity Established

Homestore contends that Tafeen personally received $15 million dollars as a result of the irregularities that resulted in the reinstatement of its financial records. Therefore, Homestore argues that Tafeen cannot satisfy the "official capacity" ("by reason of the fact") requirement of section 145(a) and the Homestore's section 145(e) advancement bylaw. According to Homestore, Tafeen's purported actions were outside the scope of his official duties because they were allegedly motivated by personal greed.

■ The Court of Chancery dismissed Homestore's "official capacity" defense to Tafeen's claim for *advancement* as a matter of law. In addressing Homestore's official capacity "by reason of the fact" argument, the Court of Chancery applied the analysis set forth in *Perconti*.[17] According to the holding in *Perconti*, in order for one to be deemed a party to a proceeding "by reason of the fact" of one's corporate position, there must be a "causal connection or nexus" between the underlying proceeding and "the corporate function or 'official [corporate] capacity.'"[18] In this case, the Court of Chancery noted that the motivation of the corporate official is not a part of the *Perconti* analysis.

In *Perconti*, the court expressly rejected the argument that the officer was not entitled to indemnification "because his conduct was motivated exclusively by personal greed."[19] In relying upon *Perconti*, the Court of Chancery was cognizant that the *Perconti* "by reason of the fact" analysis had been applied in *Reddy v. Electronic Data Systems Corp. (EDS)*, another *advancement* proceeding, that was affirmed by this Court on appeal.[20] The Court of Chancery also recognized the striking similarity between *Reddy* and this case.

In *Reddy*, a former director claimed a right to advancement for defending himself in civil and criminal proceedings.[21] The advancement provisions required EDS to advance expenses "to the fullest extent, permitted by Section 145." EDS argued that the former director was not entitled

15. Del.Code Ann. tit. 8, § 145(k).

16. *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, at 510, 2005 WL 1635200, at *7 ("[A]n advancement proceeding is summary in nature and not appropriate for litigating indemnification or recoupment."). *See also Gentile v. SinglePoint Fin., Inc.*, 788 A.2d 111 (Del.2001).

17. *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *3–*5, 2002 Del. Ch. Lexis 51, at *12–21 (Del. Ch.), 28 Del. J. Corp. L. 389 (2003).

18. *Id.* at *4, 2002 Del. Ch. Lexis 51, at *13.

19. *Id.* at *4, 2002 Del. Ch. Lexis 51, at *15.

20. *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at 5*–*7, 2002 Del. Ch. Lexis 69, at *14–21 (Del. Ch.) *aff'd* 820 A.2d 371 (Del. 2003) (mem.). In *Reddy*, the company's bylaws did not explicitly contain a "by reason of the fact" provision, but incorporated such a requirement by reference to section 145. *See* Del.Code Ann. tit. 8, § 145(a), (b).

21. *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *5–*7, 2002 Del. Ch. Lexis 69, at *14–21.

to advancement because the proceedings accused him of misappropriating funds for personal benefit. The *Reddy* court rejected that argument by applying the *Perconti* "by reason of the fact" analysis.[22] The *Reddy* court distinguished our decision in *Stifel Financial Corp. v. Cochran*[23] and noted that "*Perconti* is not an isolated decision, but instead reflects a consistent line of authority upholding the contractual and statutory advancement and indemnification rights of corporate officials charged with serious misconduct allegedly inspired by personal greed." [24]

The limited and narrow focus of an advancement proceeding precludes litigation of the merits of entitlement to indemnification for defending one self in the underlying proceedings.[25] If it is subsequently determined that a corporate official is not entitled to indemnification, he or she will have to repay the funds advanced. Accordingly, we hold that if there is a nexus or causal connection between any of the underlying proceedings contemplated by section 145(e) and one's official corporate capacity, those proceedings are "by reason of the fact" that one was a corporate officer, without regard to one's motivation for engaging in that conduct.[26]

In this case, the Court of Chancery determined there can be no doubt that "Tafeen is a party to the underlying Proceedings because of his alleged role in a scheme to inflate Homestore's financial results while serving as an officer of Home-

store." Therefore, it concluded that, because Tafeen's expenses were incurred *by reason of the fact* that he was a former officer of Homestore, those costs were within the scope of coverage provided by Homestore's mandatory and unconditional advancement bylaw. We agree. The Court of Chancery properly dismissed Homestore's "official capacity" defense as a matter of law in its summary judgment decision.

### Discovery Limitations Appropriate

In denying Tafeen's motion for summary judgment, the Court of Chancery concluded that Homestore had raised "questions of fact as to whether Tafeen has acted in a way to avoid a potential obligation to repay advanced funds." According to Homestore, Tafeen went to the Court of Chancery "with unclean hands and should be prohibited from receiving advancement." As a basis for asserting its unclean hands defense, Homestore cited the fact that Tafeen purchased an expensive house in Florida, a state with expansive homestead protections.

Nevertheless, prior to trial, Homestore also sought discovery regarding Tafeen's efforts to shelter money in a variety of ways, such as via domestic and foreign bank accounts in his name or the names of his wife, children, relatives, and friends, or via real estate held in his name or the names of others. In an effort not to undermine the narrow focus of advancement claims,[27] the Court of Chancery ruled that

**22.** *Id.*

**23.** *Stifel Fin. Corp. v. Cochran,* 809 A.2d 555 (Del.2002).

**24.** *Reddy v. Elec. Data Sys. Corp.,* 2002 WL 1358761, at *6, 2002 Del. Ch. Lexis 69, at *18–19.

**25.** *Kaung v. Cole Nat'l Corp.,* 884 A.2d 500, at 510, 2005 WL 1635200, at *7 (Del.Supr.).

**26.** *Perconti v. Thornton Oil Corp.,* 2002 WL 982419, at *3–*5, 2002 Del. Ch. Lexis 51, at *12–21 (Del.Ch.), 28 Del. J. Corp. L. 389 (2003); *Reddy v. Elec. Data Sys. Corp.,* 2002 WL 1358761, at *5–*7, 2002 Del. Ch. Lexis 69, at *14–21.

**27.** *See Kaung v. Cole Nat'l Corp.,* 884 A.2d 500, at 510, 2005 WL 1635200, at *7 (Del. Supr.).

Homestore's "discovery requests shall be limited to its allegation that Tafeen *purchased his home in Florida* with the intent to shelter assets from Homestore."

According to Homestore, the Court of Chancery effectively precluded Homestore from exploring in discovery any and all other aspects of Tafeen's financial dealings that could support its claim that Tafeen engaged in a scheme to shelter assets from Homestore and other potential creditors. Homestore also asserts that the Court of Chancery compounded this error by limiting the scope of discovery to: "what did Tafeen *know* about the investigation into allegedly improper accounting at Homestore and his right to advancement on or around the time he purchased his Florida home?" In limiting Homestore's discovery request, the Court of Chancery stated:

> its unclean hands defense was tied specifically to Tafeen's purchase of a home in Florida .... Having tied its unclean hands defense to the purchase of the home, and having only presented affidavits related to that purchase, the Court will not permit Homestore to undertake a fishing expedition regarding its recently raised allegations about Tafeen's purported disposition of other assets. Defendant's discovery requests shall be limited to its allegation that Tafeen *purchased his home in Florida* with the intent to shelter assets from Homestore.

The record reflects that, in response to Tafeen's motion for summary judgment, the only evidence Homestore offered in support of its unclean hands defense was the allegation of its general counsel, Michael Douglas: "Upon information and belief, either while still an employee at Homestore or after leaving the Company, Tafeen purchased an expensive home in Florida, a state that has extremely protective homestead laws against creditor claims." Homestore did not offer affida-

vits for any other specific acts of sheltering by Tafeen other than the Florida home purchase.

Homestore does not point to any allegations in the record prior to the Court of Chancery's summary judgment decision to provide any other specific factual basis for its unclean hands defense. Thus, Tafeen's purchase of his Florida home was the only specific factual basis Homestore offered in support of its unclean hands defense and that was the only ground upon which the Court of Chancery denied summary judgment for Tafeen. Accordingly, we hold that limiting discovery to that subject was a proper exercise of discretion by the Court of Chancery.

### Discovery Ultimately Granted

Homestore has an alternative basis for its contention that the Court of Chancery committed reversible error by not allowing Homestore broad discovery into the question: "Where did the nearly $18,000,000 in proceeds from Tafeen's stock sales ultimately end up?" We have already concluded that the Court of Chancery's initial pretrial discovery limitation was an appropriate exercise of discretion. After the first day of trial, however, the Court of Chancery determined that it wanted a more fully-developed record regarding Tafeen's "financial condition and whether or not those assets have been placed in the position to be beyond the reach of creditors."

█ In an effort to make a prompt adjudication, rather than allow full discovery, the Court of Chancery determined that it would be more appropriate for Tafeen's financial advisor, Ash Narayan, to submit a declaration detailing all of Tafeen's personal finances since January 2000. The trial was recessed for almost one month. During that time, Mr. Narayan submitted an 869–page declaration with exhibits that he

characterized: as accounting "for every asset and every financial transaction that the Tafeens have had or engaged in" from 2000 through the date of trial. Homestore was given the opportunity to depose Mr. Narayan on his declaration and the documents produced regarding the Tafeen's finances. Homestore deposed Mr. Narayan for a full day.

The Court of Chancery then held a second day of trial. The Court of Chancery framed the sole remaining issue for trial: "Did Peter Tafeen shelter assets in an effort to circumvent his obligation to repay to Homestore any fees and expenses for which Tafeen was not ultimately entitled to indemnification under Homestore's by-laws?" Mr. Narayan, Ms. Kontonickas and Tafeen were examined and cross-examined on the facts in the Narayan declaration regarding the details of Tafeen's personal finances.

Homestore argues that the expanded discovery it received was inadequate. The record does not support that assertion. Notwithstanding the Court of Chancery's initial discovery rulings, Homestore was ultimately afforded the opportunity to discover and present the exact information it says it was initially denied—discovery into where Tafeen's other assets went. The Court of Chancery was well within its discretion to determine that Mr. Narayan's declaration, deposition, and trial testimony as well as testimony by Mr. Narayan, Ms. Kontonickas and Tafeen were appropriate and adequate discovery in this advancement proceeding. Homestore's challenge to the Court of Chancery's expanded discovery rulings during trial are also without merit.

### No Unclean Hands or Unfair Dealing

Homestore asserts that, after trial, the Court of Chancery erred in rejecting the merits of Homestore's defenses of unclean hands and breach of the implied covenant of good faith and fair dealing. According to Homestore, the Court of Chancery did not consider, or give adequate weight to, what Homestore characterizes as a "shocking timeline of events" that Homestore presented to the Court of Chancery. The record reflects, however, that the Court of Chancery did consider Homestore's timeline and those events notwithstanding Tafeen's objection to that evidence.

■ After trial, the Court of Chancery found that "Tafeen purchased his Florida properties [the Prembrook Pines property purchased in February 2000 for Tafeen's in-laws and the Parkland home purchased in June 2001] ... before the internal and external investigations into Homestore's accounting practices and financial statements." This factual finding is supported by the record. The Tafeens initially decided in 1999, when Mrs. Tafeen was pregnant with their first child, to move back to their home state of Florida to raise their children near where their families reside.[28] Homestore admitted that its internal investigation had not even been conceived of at the time of the property purchases and that Mr. Tafeen did not become aware of the investigation until approximately mid-November 2001.

The Court of Chancery also found that there was no "persuasive evidence that Tafeen was aware of the homestead exemption under Florida law at the time he purchased either the Prembrook Pines or

---

**28.** The record reflects that Mr. Tafeen grew up in Florida and returned to work in Florida after college, where he met his wife. All of Mr. Tafeen's immediate family members re- side in Florida, near where the Tafeens purchased their Parkland home. Mrs. Tafeen's mother, father, sister and family, uncle and grandmother also all live in south Florida.

the Parkland homes." The Court of Chancery noted that:

[e]ven if he were aware of the homestead exemption, it seems unlikely that he would try to take advantage of it only to the limited extent of the two homes that he purchased. Were Tafeen's intention to shelter the $15 million he earned from the sale of stock options, it would appear more likely that he would have invested far more than he did.

The Court of Chancery rejected Homestore's argument that the formation of certain family trusts and limited partnerships for estate and tax planning purposes evidenced an intent to improperly shelter assets. The Court of Chancery determined, after considering "all the circumstances surrounding Tafeen's purchase of the Florida properties, together with the related family trusts and limited partnerships created at Narayan's direction for tax and estate planning purposes, ... Homestore has failed to demonstrate that Tafeen took these actions for the purpose of placing assets beyond the reach of potential creditors, including Homestore's potential claim for reimbursement."

Finally, the Court of Chancery concluded that "Tafeen's extravagant personal expenditures and lifestyle, ranging from the use of a private jet, expensive trips to Las Vegas, excessive expenditures for personal vehicles and home entertainment (for example, $50,000 for a fish tank in his Parkland home) and significant losses from investments (almost $4 million lost investing in the "Shutdown Production" concern)"— was not a basis for denying advancement. The Court of Chancery stated it was troubled by certain of these expenditures. Nevertheless, it determined that "the record does not support a finding that Tafeen has been engaged in a deliberate effort to waste assets in a manner intended to thwart potential creditors such as Homestore from seeking repayment of legitimate obligations."

Both of Homestore's defenses were dependent upon fact-based determinations. The Court of Chancery found that, "although Tafeen's extravagant lifestyle makes him less than sympathetic to the Court, Tafeen's conduct does not give rise to an unclean hands defense to Homestore's legal obligation under its own by-laws." With regard to Homestore's allegation that Tafeen breached the implied covenant of good faith and fair dealing, the Court of Chancery concluded that "nothing in this case suggests that the parties would have agreed that an officer or director, in order to receive advancement, must refrain from estate and tax planning, from buying a home in a state that has any form of homestead protection, or from incurring extravagant living expenses."

■ In examining Homestore's assertions of reversible error in rejecting those defenses, the function of an appellate tribunal in reviewing a bench trial is to determine whether the trial judge's factual findings are clearly erroneous.[29] We have determined that all of the Court of Chancery's factual findings are supported by credible and sufficient evidence in the record. Consequently, on appeal, we must uphold the Court of Chancery's post-trial fact based conclusions that Homestore had not established its affirmative defenses of either unclean hands or a breach of the covenant of good faith and fair dealing.

### Attorneys' Fees Award Upheld

Section 145(a) expressly limits the amount of indemnifiable expenses to those "reasonably" incurred. Section 145(e) does not, however, specifically provide for

---

29. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

a reasonableness limitation for expenses that are advanced. Nevertheless, this Court has held that all contracts providing for the advancement of expenses are implicitly limited to those that are reasonably incurred.[30]

■■■ Homestore submits that the Court of Chancery's reasonableness determination should be reversed and this matter remanded for further consideration. The Court of Chancery approved the Special Master's Final report and recommendations with only one exception: the calculation of pre-judgment interest. In this case, the Court of Chancery approved the Master's report solely on the basis of the record before that master and did not hear additional live testimony. Accordingly, this Court's review of the trial court's decision regarding the master's report and recommendation is *de novo*.[31]

Homestore asserts two grounds in support of its argument for reversal of the Court of Chancery's decision regarding the Special Master's Final Report. First, Homestore contends that the Special Master erroneously recommended only a $150,000 reduction in Tafeen's request for $3.5 million in attorney's fees "despite the fact that Homestore detailed the basis for a reduction of at least $1,145,000." Second, Homestore asserts that there is a "lack of credible support in the record for the conclusion that Homestore caused in any manner whatsoever the very substantial transition costs billed to Tafeen." We

have concluded that the Court of Chancery's reasonableness determination should be affirmed for the reasons stated in its March 29, 2005 opinion reviewing the Special Master's Final Report.[32]

### Conclusion

No Delaware corporation is required to provide for advancement of expenses.[33] Nevertheless, most Delaware corporations do adopt advancement provisions as an inducement which promotes the same salutary public policy that is served by indemnification: attracting the most capable people into corporate service.[34] Although advancement provides an individual benefit to corporate officials, it is actually "a desirable underwriting of risk by the corporation in anticipation of greater corporate-wide rewards" for its shareholders.[35] The broader salient benefits that the public policy behind section 145 seeks to accomplish for Delaware corporations will only be achieved if the promissory terms of advancement contracts are enforced by courts even when corporate officials, such as Tafeen, are accused of serious misconduct.[36]

The unconditional and mandatory advancement rights adopted by Homestore provided its corporate officials with the maximum possible protection against personal liability for the interim costs of involvement in any legal proceeding. The expanded record supports the Court of

30. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 823–24 (Del.1992).

31. *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del.1999).

32. *Tafeen v. Homestore, Inc.*, 2005 WL 789065 (Del.Ch.).

33. Del.Code Ann. tit. 8, § 145(e); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 823 (1992).

34. *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del.1998).

35. *Scharf v. Edgcomb Corp.*, 1997 WL 762656, at *4 (Del.Ch.).

36. *Gentile v. SinglePoint Fin., Inc.*, 788 A.2d 111 (Del.2001).

Chancery's conclusions that Tafeen is entitled to advancement under Homestore's bylaw provisions and that the expenses he submitted are reasonable. The protracted and non-summary nature of this proceeding is an aberration that, fortunately, is rarely necessary for an adjudication of contractual claims for advancement.

The judgment of the Court of Chancery is affirmed.