2026 Tex. Bus. 17



THE BUSINESS COURT OF TEXAS
ELEVENTH DIVISION

| | | |
|---|---|---|
| ENERGY FOUNDERS FUND, LP, <br><br> *Plaintiff/Counter-Defendant*, <br><br> v. <br><br> PHILLIP DASKEVICH and CRIS CURNUTT DASKEVICH, <br><br> *Defendants/Counter-Plaintiffs*, <br><br> ——————————— <br><br> PHILLIP DASKEVICH and CRIS CURNUTT DASKEVICH, both individually, and derivatively on behalf of GAGE WESTERN LLC, <br><br> *Third-Party Plaintiffs*, <br><br> v. <br><br> GAGE WESTERN LLC, et al., <br><br> *Third-Party Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § | Cause No. 26-BC11A-0004 |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO COMPEL ADVANCEMENT OF FEES

**INTRODUCTION**

¶ 1.    This dispute concerns a director's claim to advancement of defense costs and the company's position that no such right exists under its governing agreement.

¶ 2.    The issue is before the Court on a Motion to Compel Advancement of Fees filed by Defendant/Counter-Plaintiff/Third Party Plaintiff Phillip Daskevich against Third Party Defendant Gage Western LLC ("Gage Western" or "the Company"). Daskevich filed the motion in district court on September 4, 2025. The case was removed to the Business Court on January 20, 2026.[1]

¶ 3.    The motion raises three questions. First, which company agreement governs Daskevich's claimed right to advancement—the one in effect when the underlying conduct occurred, or an amended version in place when suit was filed. Second, whether Daskevich has satisfied, or is excused from satisfying, the agreement's conditions precedent to advancement. And third, whether the claims against Daskevich are brought "by reason of" his service as a director, such that they fall within the scope of any advancement provision.

¶ 4.    The parties sharply dispute each issue. In the end, the Court agrees with Daskevich on the first two, but not the third. The Court concludes that the Third

---

[1] The district court held a hearing on the motion but did not issue a ruling. At a March 3, 2026 case management conference in the Business Court, the parties agreed that all motions carried over from the district court would be decided on written submission.

Amended Company Agreement governs, that Gage Western cannot rely on a condition precedent that it made impossible to satisfy, and that the claims against Daskevich, as currently pleaded, are not brought by reason of his service as a director. The Motion is therefore DENIED.

## BACKGROUND

**A.** **Gage Western is governed by a company agreement, which sets the requirements for advancement.**

¶ 5. Gage Western is a Texas limited liability company. Its internal affairs are governed by a series of amended and restated company agreements. At the time relevant to this dispute, Daskevich was both a member of the company and a member of its board of directors.

¶ 6. Gage Western's Third Amended Company Agreement (the "Third Agreement") was in effect during the events giving rise to this dispute. The agreement includes provisions addressing both indemnification and advancement of expenses for directors.[2] In this context, "advancement" is a requirement that the Company pay a director's defense costs as they are incurred, subject to repayment if it is later determined the director is not entitled to indemnification.

¶ 7. The Third Agreement imposes two conditions on advancement. First, the director must provide a written undertaking to repay any amounts advanced if it

---

[2] Mot., Ex. 1 (Third Agreement) § 7.6(b).

is ultimately determined that indemnification is not owed.[3] Second, the board must determine that the director is financially able to repay those amounts if required.[4]

## B. The Company approved a drag-along sale, and a dispute arose over Daskevich's obligations to complete the transfer.

¶ 8.     The underlying dispute stems from a transaction involving the sale of Gage Western and the transfer of its membership units under the Third Agreement's drag-along provisions. In September 2024, a majority of the board approved the sales transaction. Daskevich did not—he voted against it.

¶ 9.     After the transaction was approved, disagreements emerged about what Daskevich was required to do next. Plaintiff Energy Founders Fund, LP ("EFF") contends that Daskevich refused—or at least failed—to take the steps necessary to transfer his units as required by the drag-along provisions.

¶ 10.   In the lead-up to suit, counsel for EFF and other members of Gage Western sent Daskevich a series of correspondence questioning his conduct and, at times, characterizing that conduct as inconsistent with his duties as a director.[5] They also warned of potential legal action, including the possibility of derivative claims.

---

[3] *Id.*
[4] *Id.*
[5] Mot., Exs. 2 (September 3, 2024 letter), 6 (September 27, 2024 letter).

¶ 11.   EFF ultimately filed suit against Daskevich and his wife. The original petition focused on their alleged refusal to transfer their membership units. In its most recent pleading, however, EFF advances a different theory, seeking a declaration that the units were automatically transferred upon EFF's issuance of the drag-along notice.

## C.     The Company adopted the Fourth Agreement and eliminated both the board of directors and advancement rights.

¶ 12.   On the same day that EFF filed suit, Gage Western adopted its Fourth Amended Company Agreement (the "Fourth Agreement").[6] Among other changes, the Fourth Agreement eliminated the board of directors and removed the provisions for advancement and indemnification.

¶ 13.   Later, Daskevich asked Gage Western to advance his defense costs under the Third Agreement. The Company declined. While Daskevich provided the required written undertaking, the board made no determination regarding his ability to repay—because, by that point, the board no longer existed.

## ANALYSIS

## A.     Texas law on advancement

¶ 14. Advancement is a contractual mechanism by which a company agrees to pay an officer's or director's legal fees as they are incurred in defending a lawsuit

---

[6] Resp. to Mot., Ex. A (Fourth Agreement) to Ex. 1 (Decl. of Joshua Murray).

arising from their service.[7] Unlike indemnification—which determines, after a case is finally resolved, who ultimately bears those expenses—advancement operates in the meantime. It provides funding during the litigation itself, so that corporate officials are not required to finance their own defense while a case is pending.[8]

¶ 15. That timing is critical. Because advancement operates before any determination of liability, it is distinct from indemnification.[9] A director may be entitled to advancement even if she is ultimately found not entitled to indemnification and must repay what was advanced.[10] Courts therefore treat advancement as a separate contractual right and enforce it according to its terms, without regard to the merits of the underlying claims.[11]

¶ 16. In Texas, advancement rights are primarily a matter of contract.[12] The Texas Business Organizations Code permits, but does not require, LLCs to provide for indemnification or advancement.[13] And when they do, they have flexibility in how those rights are defined. An LLC's governing documents may adopt the statutory

---

[7] *See In re DeMattia*, 644 S.W.3d 225, 230 (Tex. App.—Dallas 2022, orig. proceeding) (citing *In re Aguilar*, 344 S.W.3d 41, 46 (Tex. App.—El Paso 2011, orig. proceeding); *L Series, L.L.C. v. Holt*, 571 S.W.3d 864, 878–79 (Tex. App.—Fort Worth 2019, pet. denied)).

[8] *Id.*; *see also Transcent Mgmt. Consulting, LLC v. Bouri*, 152 A.3d 108, 112 (Del. 2016).

[9] *See In re DeMattia*, 644 S.W.3d at 230.

[10] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212–13 (Del. 2005).

[11] *See L Series*, 571 S.W.3d at 870–71.

[12] *Id.*

[13] *See* TEX. BUS. ORGS. CODE §§ 8.002(b), 101.402(a).

framework or craft their own rules governing advancement, including who is covered, what claims qualify, and what conditions must be satisfied.[14]

¶ 17. This approach reflects Texas's strong policy favoring freedom of contract.[15] Advancement rights exist only to the extent the company has chosen to grant them in its governing documents.[16] The Court's task, then, is a familiar one: apply ordinary principles of contract interpretation to give effect to the parties' intent as expressed in the agreement as a whole.[17] The statute, in short, permits advancement, but the contract defines it.

## B.      Which agreement governs?

¶ 18. The Court turns first to the threshold question of which company agreement governs Daskevich's claim to advancement. Gage Western argues that the Fourth Agreement controls and eliminates any right to advancement.[18] Daskevich contends that the Third Agreement applies.[19] The dispute, in essence, is about timing—whether advancement is determined by the agreement in effect when the underlying conduct occurred, or by a later amendment in place when suit is filed.

---

[14] *See id.* §§ 8.002(b), 8.105(a)(1), (d)(1).

[15] *See Primexx Energy Opportunity Fund, LP v. Primexx Energy Corp.*, 2025 Tex. Bus. 9, ¶ 136, 709 S.W.3d 619, 648 (1st Div.) (citing *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 95–96 (Tex. 2011) ("Texas regards parties' freedom to contract as they wish (within public policy) a sacred right.").

[16] TEX. BUS. ORGS. CODE §§ 8.002(b), 8.105(a)(1), (d)(1); *see also id.* § 8.003 ("A governing document of an enterprise may restrict the circumstances under which the enterprise must or may indemnify or may advance expenses to a person under this chapter.").

[17] *In re DeMattia*, 644 S.W.3d at 230 (citing *L Series*, 571 S.W.3d at 873; *In re Aguilar*, 344 S.W.3d at 49).

[18] *See* Resp. at 2.

[19] *See* Mot. ¶¶ 9–11.

¶ 19. Texas law points to a conduct-based answer. Daskevich's right to advancement arises from an agreement that was in effect when he performed his services as a director. Applying a later-adopted amendment to eliminate that right would alter the parties' bargain after the fact. Texas courts are reluctant to give contracts that kind of retroactive effect, particularly where doing so would result in a forfeiture of a right the parties bargained for.[20] That principle has particular force here. Advancement is not a gratuity extended after the fact; it is part of what the company offered Daskevich in exchange for his service.[21] Absent clear contractual language to the contrary, the Court will not construe the Fourth Agreement to reach back and extinguish those rights.[22]

¶ 20. Although Texas courts have not squarely addressed this issue, Delaware courts have, and their reasoning is persuasive.[23] Delaware law rests on the

---

[20] *See Henshaw v. Tex. Nat. Res. Found.*, 216 S.W.2d 566, 570 (Tex. 1949) (holding that forfeitures are not favored and that if a contract's terms are "fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed"); *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987) (finding that contractual amendments giving a managing general partner authority to dilute membership units without consent "work[ed] as a practical forfeiture").

[21] *See Tex. Workers' Comp. Ins. Facility v. State Bd. of Ins.*, 894 S.W.2d 49, 53–54 (Tex. App.—Austin 1995), *judgment withdrawn by agreement and appeal dismissed*, 910 S.W.2d 176 (Tex. App.—Austin 1995, no writ) (holding right to indemnification formed part of the consideration offered for servicing companies' coverage of high-risk insureds, reasoning that unilateral cancellation of the indemnification right would impermissibly destroy part of the consideration supporting the contract). The Austin Court of Appeals in a later opinion confirmed that, despite the *Texas Workers'* judgment being withdrawn and the appeal dismissed (due to settlement), the opinion had not been withdrawn. *Aetna Cas. & Sur. Co. v. Tex. Workers' Comp. Ins. Facility*, No. 03-97-00285-CV, 1998 WL 153564, at *5 (Tex. App.—Austin Apr. 2, 1998, pet. denied).

[22] *Reilly*, 727 S.W.2d at 530 ("Courts will not declare a forfeiture unless they are compelled to do so by language which can be construed in no other way.").

[23] On issues of advancement, Texas courts have not hesitated to look to Delaware for guidance. *See, e.g., In re Aguilar*, 344 S.W.3d at 47 (citing *Int'l Airport Ctrs., LLC v. Citrin*, 455 F.3d 749, 750 (7th Cir. 2006)) (referring to advancement as a "Delaware specialty"); *L Series*, 571 S.W.3d at 871; *In re DeMattia*, 644 S.W.3d at 230. The *Aguilar* court concluded that even where other jurisdictions have addressed issues of

same basic premise: advancement rights cannot be retroactively eliminated after the conduct giving rise to those rights has occurred. That rule is codified in statute and repeatedly reinforced in case law.[24] Advancement is treated as part of the bargain for service.[25] Individuals accept the risks of fiduciary service with the understanding that if litigation arises from that service, the company will fund their defense in the interim. Once that service is performed, the corresponding rights vest and are not subject to later withdrawal.[26]

¶ 21.   Delaware courts have illustrated the point with a useful analogy to occurrence-based insurance.[27] In that setting, coverage turns on when the underlying event occurred, not on when a claim is later asserted or when the policy is later changed. The same logic applies here. The relevant inquiry is whether the right to advancement existed when the underlying conduct occurred.[28] If so, those rights persist regardless of later amendments to the governing documents.[29] This reflects the proper allocation of risk. The company decides at the outset what protections it is willing to offer in exchange for service, and the director decides

---

advancement, their approaches generally mimic Delaware law. *Id.* (quoting Stephen A. Radin, *"Sinners Who Find Religion": Advancement of Litigation Expenses to Corporate Officials Accused of Wrongdoing*, 25 REV. LITIG. 251, 271 (2006)).

[24] *See* DEL. CODE tit. 8, § 145(f); *see, e.g.*, *Transcent Mgmt. Consulting*, 152 A.3d at 112; *Marino v. Patriot Rail Co.*, 131 A.3d 325, 341 (Del. Ch. 2016).

[25] *Marino*, 131 A.3d at 341 (citing RESTATEMENT (SECOND) OF CONTRACTS § 53 (1981)) ("As a matter of black letter contract law, the covered person's service provides the consideration necessary to form a binding contract.").

[26] *Id.*

[27] *Id.* at 342.

[28] *Id.*

[29] *Id.*

whether to serve in light of those protections. Once the service is performed, both sides have acted in reliance on that bargain. It would make little sense to let those rights rise or fall based on the fortuity of when litigation is filed or whether the company later changes its internal rules.

¶ 22. Finally, the policies underlying advancement reinforce the same conclusion. Advancement provisions are designed to encourage capable individuals to serve as corporate fiduciaries by assuring them that they will not have to fund their own defense of claims arising from that service.[30] That assurance would mean little if a company could eliminate those protections after the service was performed.[31] A conduct-based rule avoids that arbitrariness and promotes predictability by tying the parties' rights and obligations to the agreement in place when the relevant conduct occurred.

¶ 23. Taken together, these principles compel a conclusion that advancement rights are determined by the contractual framework in place when the underlying conduct occurred, not by amendments adopted after a dispute has arisen. Absent

---

[30] *See Transcent Mgmt. Consulting*, 152 A.3d 108 at 113 (describing advancement as "an inducement for attracting capable individuals into corporate service"); *Gandhi-Kapoor v. Hone Cap. LLC*, 305 A.3d 707, 718 (Del. Ch. 2023) (stating that "[r]ights to indemnification and advancement are deeply rooted in the public policy of Delaware corporate law" and "promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the [entity] they have served if they are vindicated" (quoting *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005); *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002))).
[31] *Marino*, 131 A.3d at 341.

clear contractual language providing for retroactive application, a later agreement will not extinguish advancement rights tied to earlier conduct.

¶ 24. Because the claims against Daskevich arise from conduct occurring while the Third Agreement was in effect, that agreement governs.

**C. Has Daskevich satisfied all conditions precedent to advancement?**

¶ 25. The Court next considers whether the conditions precedent to advancement have been satisfied—or if not, whether they are excused.

¶ 26. Section 7.6(b) of the Third Agreement imposes two such conditions. First, the director must provide a written undertaking agreeing to repay any amounts advanced if it is later determined that he is not entitled to indemnification.[32] Second, the Company's board must make a reasonable determination that the director has the ability to repay those sums if necessary.[33]

¶ 27. The first condition is not in dispute. Daskevich provided the required undertaking simultaneously with his request for advancement.

¶ 28. The second condition is more problematic. There is no indication that Daskevich obtained the requisite board determination regarding his ability to repay.

¶ 29. That does not end the inquiry, however. The pertinent question is why the condition was not satisfied. The answer is simple. The record shows that on the

---

[32] Mot., Ex. 1 § 7.6(b).
[33] *Id.*

day this litigation was filed, Gage Western adopted the Fourth Agreement and eliminated its board of directors. In doing so, it removed the only mechanism by which the required determination could be made.[34]

¶ 30.   This is a legally sufficient excuse. Texas law does not permit a party to rely on the non-occurrence of a condition precedent that it has itself prevented. As courts have explained, "a party who prevents or makes impossible the occurrence of a condition precedent upon which its liability under a contract depends cannot rely on the nonoccurrence to escape liability."[35] Courts applying this principle consistently hold that when a party interferes with or disables the occurrence of a condition, the condition is excused and deemed satisfied.[36]

¶ 31.   That principle applies here. By eliminating the board, Gage Western rendered compliance with the condition impossible. The inability to obtain a board determination therefore resulted from Gage Western's own actions, not from any failure by Daskevich to comply with the agreement.

¶ 32.   The second condition precedent is therefore excused. The absence of a Board determination does not bar advancement.

---

[34] *See* Resp. to Mot., Ex. A to Ex. 1.
[35] *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 519 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (internal quotation marks omitted).
[36] *See, e.g.*, *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 146 (Tex. App.—Dallas 2012, no pet.); *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.,* 41 S.W.3d 259, 265 (Tex. App.—San Antonio 2001, pet. denied).

**D.** **Are the claims against Daskevich brought "by reason of" his status as a director?**

¶ 33. The Court turns next to the dispositive issue of whether the claims against Daskevich are brought "by reason of" his service as a director. Before reaching that question, the Court must define the proper scope of its review—specifically, whether that determination should be based solely on the "eight corners" of the company agreement and the live pleading, or may the Court also consider extrinsic evidence bearing on the nature of the claims. For the reasons that follow, the Court adopts the former approach.

### 1. Governing framework

¶ 34. Advancement proceedings are summary in nature.[37] Their purpose is not to adjudicate the merits of the underlying dispute, but to determine whether the movant has established a contractual right to interim payment of defense costs.[38] The inquiry is therefore intentionally limited.[39]

¶ 35. In keeping with that role, courts generally resolve advancement disputes by examining two things: the governing agreement and the live pleadings

---

[37] *Gandhi-Kapoor*, 305 A.3d at 718; *Homestore*, 888 A.2d at 214.
[38] *Homestore*, 888 A.2d at 214 ("The limited and narrow focus of an advancement proceeding precludes litigation of the merits of entitlement to indemnification . . . .").
[39] *Id.*; *Gandhi-Kapoor*, 305 A.3d at 718.

in the underlying action.[40] The question is whether the claims, as pleaded, fall within the scope of the advancement provision.[41]

¶ 36.   This streamlined approach also serves a practical end: speed. The entire point of advancement is to provide timely funding of defense costs while litigation proceeds. Although not identical to an insurer's duty to defend, advancement serves a similar interim function. That function would be undermined if courts delayed resolution or engaged in fact-intensive inquiries that effectively adjudicate the merits.

¶ 37.   To be sure, Delaware courts have, in limited circumstances, looked beyond the governing documents and live pleadings. But those cases are the exception, not the rule. And they typically involve the use of extrinsic evidence to resolve ambiguity in the advancement provisions themselves—not to recharacterize the nature of the claims asserted.[42]

---

[40] *Marino*, 131 A.3d at 346 ("The scope of an individual's advancement rights normally turns on the pleadings in the underlying litigation that trigger the advancement right."); *Holley v. Nipro Diagnostics, Inc.*, No. CA 9679-VCP, 2014 WL 7336411, at *8 (Del. Ch. Dec. 23, 2014) (mem. op.) ("[I]n this case, the 'by reason of the fact' analysis requires looking to the allegations in the SEC's complaint."); *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1051 (Del. Ch. 2014) ("Having re-examined the amended complaint in the Pennsylvania Action, I find that . . . Scott was made a party to the Pennsylvania Action 'by reason of' his former corporate office.").

[41] *Martinez v. Regions Fin. Corp.*, No. CIV.A. 4128-VCP, 2009 WL 2413858, at *12 (Del. Ch. Aug. 6, 2009) (holding that advancement disputes turn on "the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought").

[42] *See, e.g.*, *Sodano v. Am. Stock Exch. LLC*, No. CIV.A. 3418-VCS, 2008 WL 2738583, *10–12 (Del. Ch. July 15, 2008), *aff'd sub nom. Am. Stock Exch. LLC v. Fin. Indus. Regul. Auth., Inc.*, 970 A.2d 256 (Del. 2009) (mem. op.) ("[T]urning to the extrinsic evidence relevant to the interpretation of the language in the NASD Settlement Agreement and Release . . . confirms that the language was intended to cover both advancement and ultimate indemnification.").

¶ 38. On balance, then, the Court concludes that it should confine its analysis to the eight corners of the company agreement and the petition. This approach best preserves the summary nature of advancement proceedings, promotes predictability, and avoids premature entanglement with the merits. Although departure from this framework may be warranted in limited circumstances—such as where the advancement clause itself suffers from an ambiguity—no such circumstance is present here. The Court therefore adheres to the eight-corners approach.

2. Contractual language

¶ 39. The text of the Third Agreement illustrates why it is important for the Court to focus only on the pleaded claims. The indemnification and advancement provisions provide, in relevant part:

> The company shall, to the fullest extent permitted by law . . . indemnify, defend and hold harmless each current and former director for any and *all claims or threats* thereof, expenses and liabilities or threats thereof . . . that such director may incur by reason of being a director . . . or by virtue of taking any action pursuant to this agreement in such capacity. . . . Expenses incurred by any current or former director in defense or settlement of *any claim* that may be subject to indemnification, to the fullest extent permitted by law, shall be advanced by the company prior to the final disposition thereof ....[43]

¶ 40. A closer look at that language reveals a deliberate narrowing. The indemnification clause sweeps broadly, extending to "claims *or threats* thereof" and to "expenses and liabilities *or threats* thereof." The advancement provision does not.

---

[43] Mot. Ex. 1 § 7.6(b) (emphasis added).

It omits any reference to "threats" and applies only to "any claim that may be subject to indemnification." In this context, "claim" is properly understood to be limited to causes of action actually asserted in litigation—not to unasserted allegations, demands, or threats. Given that distinction, the Court declines to extend the advancement provision beyond pleaded claims.[44] Had the parties intended otherwise—to include, for example, pre-suit threats or demands—they would have said so.

¶ 41.   The Court therefore confines its analysis to the claims as pleaded.

3.      Application to the pleadings

¶ 42.   The Court now turns to the final question: whether the claims asserted in the petition are brought "by reason of" Daskevich's service as a director. They are not. As pleaded, the claims do not target conduct undertaken by Daskevich in his capacity as a director or in the discharge of any director-level duties, but instead arise from his alleged refusal, in his capacity as a *member*, to transfer—or to acknowledge the transfer of—his ownership units.

¶ 43.   The petition, in short, sounds in shareholder rights and contractual obligations—not fiduciary conduct. It alleges that Daskevich failed to comply with transfer requirements triggered by the drag-along provisions and seeks relief to

---

[44] *In re DeMattia*, 644 S.W.3d at 230; *see also FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 68 (Tex. 2014) (declining to "selectively import terms from other provisions to compensate for the absence of" a term because "the omission was intentional and deliberate").

effectuate the sale under Section 9.2 of the Third Agreement.[45] Every allegation follows the same path, focusing on share ownership, transfer mechanics, and the drag-along provisions for owners.[46]

¶ 44. The absence of any director-based theory is equally telling. Nothing in the petition turns on the exercise of board authority or the discharge of director-level duties. To the contrary, the pleadings reflect that the transaction at issue has already received all necessary board approval.[47] The alleged wrongdoing centers on what followed that approval—Daskevich's refusal to transfer, or to acknowledge the transfer of, his units.

¶ 45. Undeterred, Daskevich urges the Court to look beyond the pleadings, pointing to pre-suit correspondence that criticized his conduct as a director and threatened derivative claims.[48] But that argument runs headlong into the framework the Court has already adopted. As explained, the Court's task is to evaluate the claims actually asserted—not those merely contemplated or threatened before suit was filed. For that reason alone, the Court declines to consider the pre-suit correspondence.

¶ 46. And even if the Court were to look beyond the pleadings, the result would be the same. The pre-suit correspondence arose in a different setting and

---

[45] Fourth Am. Pet. ¶¶ 2–4.
[46] *Id.* ¶¶ 4, 19, 20.
[47] *Id.* ¶ 18.
[48] Mot. ¶¶ 3–6; Reply ¶ 5; Reply, Ex. A (August 27, 2024 email correspondence).

served a different purpose. It was sent before the transaction closed, when the concern was that Daskevich might derail the proposed sale. The communications were aimed at preventing that outcome—warning him not to interfere and threatening derivative claims if he succeeded in blocking the transaction.[49]

¶ 47.  That is not what happened. The sale closed. The lawsuit that followed addresses a different problem altogether: Daskevich's alleged refusal, as an equity owner, to comply with his transfer obligations after the transaction was approved and completed. The claims threatened, in short, are not the claims brought.

¶ 48.  To satisfy the "by reason of" requirement, there must be a meaningful nexus between the pleaded claims and the defendant's service in the covered capacity.[50]  It is not enough that a defendant happened to be a director or that his status forms part of the factual background.

¶ 49.  That nexus is absent here. The claims arise from Daskevich's conduct as an equity holder resisting a transaction affecting his ownership interests—not from his conduct as a director exercising board-level authority.

---

[49] Mot., Ex. 2; Reply, Ex. A. The other referenced correspondence is a September 27, 2024 letter that was clearly designated as a "Rule 408 Confidential Settlement Communication." Mot., Ex. 6. For that reason alone, the Court does not consider it.

[50] *Homestore*, 888 A.2d at 214.

¶ 50. Because the claims asserted against Daskevich are not brought by reason of his service as a director, they do not fall within the scope of the advancement provision of the Third Agreement.

**CONCLUSION**

¶ 51. The Court concludes that (1) the Third Agreement governs, and (2) the Company may not rely on a condition precedent that it rendered impossible to satisfy. The Court further concludes, however, that the claims against Daskevich are not brought by reason of his service as a director and therefore do not fall within the scope of the advancement provision.

¶ 52. The motion for advancement is therefore **DENIED**.

¶ 53. This ruling is limited to Daskevich's present claim to advancement. It does not adjudicate the merits of the underlying claims or any ultimate entitlement to indemnification.

IT IS SO ORDERED.

_____
BRIAN STAGNER
Judge of the Texas Business Court,
Eleventh Division, sitting by
assignment

Signed: April 9, 2026