# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW C. NIELSEN, JONATHAN C. NIELSEN and MICHAEL J. REYNOLDS, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 2019-0164-MTZ |
| EBTH Inc., a Delaware Corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION
Date Submitted: June 26, 2019
Date Decided: September 30, 2019

D. McKinley Measley, Lauren Neal Bennett, and Barnaby Grzaslewicz, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, Delaware; Joseph C. Weinstein and Sean L. McGrane, SQUIRE PATTON BOGGS (US) LLP, Cleveland, Ohio, *Attorneys for Plaintiffs Andrew C. Nielsen, Jonathan C. Nielsen, and Michael J. Reynolds.*

Jonathan M. Stemerman, ELLIOTT GREENLEAF P.C., Wilmington, Delaware; Frances Floriano Goins, ULMER & BERNE, LLP, Cleveland, Ohio; and John M. Hands, ULMER & BERNE, LLP, Cincinnati, Ohio, *Attorneys for Defendant EBTH, Inc., a Delaware Corporation.*


**ZURN, Vice Chancellor.**

This case presents the common issue of whether the plaintiffs are entitled to advancement of fees and expenses incurred in a separate action. Advancement cases often follow a familiar series of steps: 1) a corporation grants its officers or directors advancement rights; 2) those directors or officers are hauled into court for acts relating to their role with the corporation; 3) those individuals then seek to exercise the rights the corporation granted them; and 4) the corporation resists, arguing that entitlement is improper because the case is exceptional and requires the Court to deviate from well-settled principles of law. But all advancement cases present unique facts because the underlying actions take various forms. Despite the many nuances, few cases present facts that fall short of Delaware's standard favoring advancement.

This case follows the common pattern. The plaintiffs are former officers or directors of the defendant company. The company granted mandatory advancement rights to the plaintiffs in its certificate of incorporation, as well as in separate indemnification agreements. While serving in their corporate roles, the plaintiffs sold their stock in the company in a private transaction. The company was not a party to the transaction, but entered into an agreement with the buyer that allowed the buyer to obtain the company's confidential and proprietary financial information in considering the transaction. That agreement explicitly authorized the buyer to seek information from the plaintiffs and one additional person who the

2

plaintiffs controlled. Thereafter, the plaintiffs allegedly provided the buyer with false, misleading, or otherwise incomplete information about the company's financial status, and did so on the company's behalf. This information was material to the buyer's decision to complete the transaction. After the closing, the buyer discovered the plaintiffs' misconduct and sued the plaintiffs and the company, alleging that the plaintiffs used their status as company insiders to fraudulently induce the buyer to purchase stock for the plaintiffs' benefit.

The plaintiffs asked for advancement, and the company refused, resulting in this action. On the plaintiffs' motion for summary judgment, the company contends that the plaintiffs are not entitled to advancement because they are not parties to the underlying action by reason of the fact that they served as officers or directors of the company. The company argues that this case is unique, and distinguishable from cases involving claims by a company against its own officers or directors, because the plaintiffs sold the stock in their individual capacities and because the company was not a party to the transaction and owed no duty to the buyer.

I disagree and grant the plaintiffs' motion for summary judgment. The plaintiffs are entitled to advancement because, according to the pleadings in the underlying action, they are parties to that action by reason of the fact that they served as directors or officers of the company.

## I.    BACKGROUND

This advancement action for expenses and fees-on-fees arises from claims against plaintiffs Andrew Nielsen ("A. Nielsen"), Jonathan ("J. Nielsen"), and Michael Reynolds (collectively, "Plaintiffs") in an action pending in the United States District Court for the Southern District of Ohio, *Light EBTH LLC v. EBTH Inc. et al.*, 1:19-cv-00011-TSB, (the "Ohio Action").   Defendant EBTH Inc. ("EBTH," or the "Company") is a Delaware corporation with its principal place of business in Cincinnati, Ohio.  Plaintiffs are former officers of EBTH and former members of EBTH's board of directors (the "Board").  At all times relevant to the Ohio Action and this proceeding, Plaintiffs served as EBTH officers or Board members.

Plaintiffs contend that they are entitled to advancement for the Ohio Action under the Company's charter and its indemnification agreements with Plaintiffs. On Plaintiffs' motion for summary judgment (the "Motion"), the facts are drawn from the evidentiary record developed by the parties, including the undisputed allegations of the Verified Complaint for Advancement (the "Advancement Complaint"), the pleadings in the Ohio Action, and other documentary exhibits that are not factually disputed.

**A.** **Plaintiffs Were Officers, Directors, Employees, And Agents Of EBTH Covered By Advancement Provisions In The EBTH Charter And Indemnification Agreements.**

From May 2012 through early 2018, A. Nielsen served as the Company's President and Chief Executive Officer, and as a member of the Board. J. Nielsen served as the Company's Chief Revenue Officer from May 2012 through March 2017, as the Company's Chief Business Officer from March 2017 through May 2018, and as a member of the Board during those times. Reynolds served as the Company's Chief Financial Officer from May 2012 through October 2016, as Chief Operating Officer from October 2016 through March 2018, and as a member of the Board from May 2012 through late 2016.

By serving in these roles, Plaintiffs benefitted from advancement provisions in the Company's Third Amended and Restated Certificate of Incorporation (the "Charter") and their Indemnification Agreements with EBTH. The Charter provides for mandatory indemnification and advancement as follows:

> The Corporation shall indemnify and hold harmless, to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, any person (an "Indemnified Person") who was or is made or is threatened to be made a party or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding"), by reason of the fact that such person . . . is or was a director or officer of the Corporation . . . .[1]

---

[1] Docket Item ("D.I.") 1 [hereinafter "Compl."] Ex. A, Art. Tenth, § 1.

> The Corporation shall advance (i.e., pay in advance) the expenses . . . incurred by a person in defending any Proceeding in advance of its final disposition, <u>provided</u>, <u>however</u>, that, to the extent required by law, such payment of expenses in advance of the final disposition of the Proceeding shall be made only upon receipt of an unsecured undertaking by the Indemnified Person to repay all amounts advanced if it should be ultimately determined that the Indemnified Person is not entitled to be indemnified under this Article Tenth or otherwise.[2]

The Charter also contains a "fees-on-fees" provision, providing that in connection with an action to enforce a right to advancement, "if successful in whole or in part, [Plaintiffs] shall be entitled to be paid the expense of prosecuting such claim."[3] Under the Charter's terms, the Company bears the burden of proving the individual is not entitled to the indemnification or advancement.[4]

On November 19, 2014, EBTH entered into an Indemnification Agreement with each Plaintiff.[5] Each Indemnification Agreement contains the following advancement provision:

---

[2] *Id.* Ex. A, Art. Tenth, § 2.

[3] *Id.* Ex. A, Art. Tenth, § 3.

[4] *Id.* ("In any such action, the Corporation shall have the burden of proving that the Indemnified Person is not entitled to the requested indemnification or advancement of expenses under applicable law.").

[5] *Id.* Exs. B–D.

Advancement of Expenses. Notwithstanding any other provision of this Agreement, the Company shall advance all Expenses incurred by or on behalf of Indemnitee in connection with any Proceeding by reason of Indemnitee's Corporate Status within thirty (30) days after the receipt by the Company of a statement or statements from Indemnitee requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding. Such statement or statements shall reasonably evidence the Expenses incurred by Indemnitee and shall include or be preceded or accompanied by a written undertaking by or on behalf of Indemnitee to repay any Expenses advanced if it shall ultimately be determined that Indemnitee is not entitled to be indemnified against such Expenses. Any advances and undertakings to repay pursuant to this Section 5 shall be unsecured and interest free.[6]

Section 13 of the Indemnification Agreements defines "Proceeding" as

any threatened, pending or completed action . . . in which Indemnitee was, is or will be involved as a party or otherwise, by reason of his or her Corporate Status, by reason of any action taken by him or of any inaction on his part while acting in his or her Corporate Status . . . .[7]

Finally, Section 7 of the Indemnification Agreements entitles Plaintiffs to legal fees and costs incurred in prosecuting their advancement rights, "regardless of whether Indemnitee ultimately is determined to be entitled to such . . . advancement of expenses."[8]

---

[6] *Id.* Ex. B § 5, Ex. C § 5, Ex. D § 5. Section 13 of the Indemnification Agreements defines "Corporate Status" as "the status of a person who is or was a director, officer, employee, agent or fiduciary of the Company or of any other corporation, partnership, joint venture, trust, employee benefit plan or other enterprise that such person is or was serving at the express written request of the Company." *Id.* Ex. B § 13(a), Ex. C § 13(a), Ex. D § 13(a).

[7] *Id.* Ex. B § 13(f), Ex. C § 13(f), Ex. D § 13(f).

[8] *Id.* Ex. B § 7(d), Ex. C § 7(d), Ex. D § 7(d).

### B. The Ohio Action Alleges Plaintiffs And EBTH Misrepresented Or Omitted Material Facts In Connection With A Stock Purchase Transaction.

I draw the following background from the allegations in the Ohio Action. Five individuals sold EBTH shares to ten different investors in "an overall offering by which multiple founders of the Company sold" their shares to multiple buyers,[9] referred to as the "Founder's Stock Offering."[10] The sellers included Plaintiffs, who were Company "insiders."[11] Light EBTH ("Light") purchased shares in the Founder's Stock Offering and is the plaintiff in the Ohio Action.[12] Light has three members: two individuals and an entity called SLC, LLC ("SLC"). Light was formed at the request of EBTH and Plaintiffs in order to avoid investments in EBTH stock by multiple individuals purchasing modest amounts.

The transaction was memorialized in a Stock Purchase Agreement (the "SPA"), which reflects that Reynolds sold 328,581 of his EBTH shares to Light for $801,134.37, and J. Nielsen sold 40,549 of his EBTH shares to Light for $98,865.12.[13] Although A. Nielsen did not sell any EBTH shares to Light, he sold

---

[9] D.I. 46, Ex. 1 ¶ 52 [hereinafter "FAC"].

[10] *Id.* ¶¶ 24, 31, 41.

[11] *Id.* ¶ 53.

[12] *See id.* ¶¶ 1, 16, 51–53.

[13] *Id.* Ex. A, Schedule A.

781,845 of his shares to another purchaser in the Founder's Stock Offering for $1,906,266.34.[14]

EBTH was not a party to the SPA, but helped facilitate the Founder's Stock Offering. EBTH and SLC executed a Non-Disclosure Agreement (the "NDA"). Through the NDA, EBTH agreed to make its "non-public, confidential or proprietary" information available to Light[15] and stated that "EBTH, Inc. and its advisors and agents" would provide this information for purposes of "a potential investment or other transaction with the Company."[16] Light alleges that the NDA's scope included communications relevant to Light's investment through the Founder's Stock Offering.

The NDA specifically identified A. Nielsen, J. Nielsen, Reynolds, and Chip Nielsen as agents and controlling "Principals" of EBTH, and identified the Principals as Light's sole source of EBTH information.[17] The Principals acted on behalf of the Company and each other in connection with any disclosures or communications made under the NDA and any transaction contemplated by the NDA.[18] A. Nielsen signed the NDA as EBTH's CEO.

---

[14] *Id.*

[15] *Id.* ¶ 26.

[16] *Id.* ¶ 27.

[17] *Id.* ¶¶ 28–29.

[18] *Id.* ¶¶ 29–31.

Before the transaction closed, Plaintiffs made a series of representations to Light and other investors regarding EBTH's financial vitality. Light attributes these representations to the "collective action" of Plaintiffs and EBTH.[19] On December 1, 2016, A. Nielsen verbally represented that EBTH's sales revenue was expected to rise in 2017.[20] On December 3, A. Nielsen, acting on behalf of Plaintiffs and EBTH, emailed Light a copy of the executed NDA.

Also on December 3, A. Nielsen emailed Light an EBTH pitch deck containing additional information about the Founder's Stock Offering, including the price per share.[21] The pitch deck also included material financial projections for 2016 and 2017, which were consistent with A. Nielsen's verbal representations. A. Nielsen sent the pitch deck to Light from his EBTH email address, and J. Nielsen was copied on the email. The pitch deck bore the EBTH logo. On December 10, A. Nielsen emailed Light on behalf of Plaintiffs and EBTH and provided Company financial information for 2015 and 2016 (through October 2016), as well as the Company's purported growth model. He signed the email as EBTH's CEO.

---

[19] *Id.* at 6 (referring to "The December 3, 2016 Representations and Defendants' Collective Action").

[20] *Id.* ¶ 22.

[21] *Id.* ¶¶ 20–21, 23–24.

On December 19, A. Nielsen emailed Light "the most current info" pertaining to the 2017 projections.[22] On December 22, A. Nielsen again emailed Light to provide information about the Founder's Stock Offering. In that email, A. Nielsen proposed a valuation of the Company's common stock that was consistent with the 2016 projections previously provided on December 3 and December 10 and again presented it as "the most current info."[23] Neither email mentioned any changes or revisions to the 2016 budget or projections.[24] A. Nielsen sent both emails from his EBTH email address, on behalf of the Plaintiffs and the Company.

On January 3, 2017, SLC asked Plaintiffs to send Light updated financials in order to assess the proposed stock purchase.[25] SLC also raised concerns about the "Company's SG&A expenses, and thereby its resulting loss expectations for 2016 and 2017, and raised various questions regarding the Company's required transaction size, profitability, and performance."[26] In response, A. Nielsen emailed Light on January 3 and attached a document that contained certain EBTH financial information, including some of the Company's "actual" financials as of November 30, 2016, but omitted certain financial statements and material information about

---

[22] *Id.* ¶¶ 39–40.

[23] *Id.* ¶ 41.

[24] *See id.* ¶¶ 39–41.

[25] *Id.* ¶ 43.

[26] *Id.* ¶ 44.

EBTH's 2016 projections.[27] A. Nielsen sent the email from his EBTH address and on behalf of the other Plaintiffs and EBTH.

On January 6, in reliance on Plaintiffs' oral and written statements on EBTH's behalf, Light purchased EBTH shares in the Founders Stock Offering.[28] Under the SPA, Plaintiffs represented and warranted that the transaction would not violate any state or federal law,[29] and that "[t]o each Seller's knowledge, since October 19, 2016, there has not been a material adverse effect on the business of the Company,"[30] "implying that full disclosure of the business's financial projections and results through that point in time had been made."[31] The stock purchase closed on January 9.

Thereafter, a series of post-closing communications revealed that EBTH's actual financial state was materially different than Plaintiffs and EBTH represented to Light before the closing.[32] Light learned

---

[27] *Id.* ¶ 47.

[28] *See id.* ¶¶ 50–53.

[29] *Id.* Ex. 1 § 4(b); *see also id.* ¶ 54.

[30] *Id.* Ex. 1 § 4(h); *see also id.* ¶ 55.

[31] *Id.* ¶ 55.

[32] *See, e.g., id.* ¶¶ 57–58, 67, 71, 74, 76, 80.

12

the information provided by [Plaintiffs] as of the consummation of the stock transaction did not include the detailed, most up-to-date financial information as had been requested, the most current projection information for the Company's 2016 financial performance, or accurate information available to [Plaintiffs] as of the time of the parties' interactions that was necessary to make [Plaintiffs'] prior disclosures accurate, corrected, complete, and not misleading under the circumstances.[33]

Light concluded that Plaintiffs and EBTH were aware of the information's fraudulent nature and had the "willful intent" to induce Light to purchase EBTH shares "through the presentation of an outdated and fabricated growth model to which [Plaintiffs] claimed to be privy as insiders of the Company."[34]

For example, on January 10, EBTH's Chief Financial Officer emailed the first routine distribution of EBTH's financial information to Light and other EBTH stockholders. The email included "EBTH November 2016 Financials" and was addressed to Plaintiffs and blind copied to EBTH investors.[35] The email contained more complete and detailed financial information than Light had received prior to the closing, as well as information that Light had not received prior to the closing.[36] The CFO was not an authorized point of contact under the NDA, so

---

[33] *Id.* ¶ 48.

[34] *Id.* ¶ 38.

[35] *Id.* ¶ 58.

[36] *Id.* ¶¶ 60–66.

Light alleges it could not have contacted him or gathered this information prior to closing.[37]

According to Light, the January 10 email demonstrated that (1) EBTH had reforecasted its 2016 projected losses in October 2016 and materially increased them over the loss numbers that had been provided to Light; (2) EBTH and Plaintiffs, as EBTH insiders and management, knew of this October 2016 reforecast; and (3) Plaintiffs, as EBTH insiders, concealed this information and continued to knowingly misrepresent EBTH's financials.[38] Light alleges that Plaintiffs and EBTH utilized accurate EBTH information to manage EBTH and value their own stock, but knowingly gave Light inaccurate information that they failed to update or correct.[39] Light concludes Plaintiffs fraudulently induced Light to purchase common stock shares of the Company by "repeatedly and materially misrepresenting the true (and severely deteriorating) financial condition of the Company."[40]

---

[37] *See id.* ¶¶ 57, 68, 97, 129.

[38] *Id.* ¶ 67.

[39] *Id.*

[40] *Id.* ¶¶ 1, 17.

14

### C. Litigation Ensues; Plaintiffs Demand Advancement Of Their Legal Expenses From The Ohio Action, And EBTH Refuses To Pay.

On September 5, 2018, Light's counsel sent a letter to Plaintiffs, demanding payment of $900,000 in connection with Plaintiffs' alleged pre-closing statements and omissions. On September 28, Plaintiffs' counsel forwarded Light's September 5 letter to the Company. On November 27, Light's counsel informed Plaintiffs' counsel that "[Light] has authorized this Firm to proceed with the filing of a Complaint against your clients [A. Nielsen, J. Nielsen, and Reynolds]."[41] On December 5, Plaintiffs' counsel sent the Company a demand for indemnification and advancement of expenses incurred and to be incurred in connection with Light's demand and threatened lawsuit, any lawsuit Light actually filed, and any future judgments, penalties, fines and amounts paid in settlement.

Light filed the Ohio Action on January 3, 2019, alleging Plaintiffs materially misrepresented EBTH's deteriorating financial condition prior to the SPA's closing. Light's complaint (the "Original Ohio Complaint") included claims against Plaintiffs for violations of federal and Delaware securities laws, common law fraud, negligent misrepresentation, civil conspiracy, breach of fiduciary duty, and in the alternative, unjust enrichment.[42] Light also brought a claim of aiding

---

[41] Compl. ¶ 19 (second alteration in original).

[42] *Id.* Ex. H.

15

and abetting breach of fiduciary duty against EBTH, as well as a claim for breach of contract against J. Nielsen and Reynolds.

On January 10, EBTH denied Plaintiffs' requests for indemnification and advancement.[43] EBTH asserted that Plaintiffs' involvement in the Ohio Action was not by reason of the fact that they were former directors or officers of the Company.[44] EBTH stated Plaintiffs "were not acting in their status as officers of [EBTH] when they sold their shares"[45] and that "[c]learly, [Plaintiffs] were acting in their personal capacities in the personal sale of their common stock."[46]

Undeterred, on January 23, Plaintiffs sent Undertakings for Indemnification and Advancement of Expenses to EBTH; on February 4, Plaintiffs asked the Company to reconsider Plaintiffs' requests. When EBTH did not respond, Plaintiffs contacted the Company on February 4 and asked for a response. On February 8, the Company again denied Plaintiffs' requests, asserting that the "Complaint [in the Ohio Action] arises out of a private stock transaction whereby Light . . . purchased stock held by, among others, [Plaintiffs]" and that "[i]t is clear

---

[43] *Id.* Ex. I.

[44] *Id.* Ex. I at 1–2.

[45] *Id.* Ex. I at 1.

[46] *Id.* Ex. I at 2.

16

from the face of the Complaint that this dispute has nothing to do with EBTH or [Plaintiffs'] former roles at EBTH."[47]

### D. Plaintiffs File This Action To Compel The Advancement Of Expenses In The Ohio Action And To Seek Fees-on-Fees.

On February 27, Plaintiffs filed the Advancement Complaint to compel the advancement of their fees and expenses incurred defending against the Ohio Action. On March 21, EBTH answered the Complaint. On April 11, Plaintiffs filed the pending Motion. The parties briefed the Motion, and I held oral argument on May 17. At oral argument, EBTH conceded that Plaintiffs were entitled to advancement for legal costs and fees accrued in defending the Ohio Action's breach of fiduciary duty count. EBTH still disputes entitlement as to the other counts.

On June 3, Light filed a First Amended Complaint in the Ohio Action (the "Ohio FAC"). The Ohio FAC colors the factual and legal allegations set forth in the Original Ohio Complaint. It adds a claim for violation of Ohio securities laws; makes Plaintiffs the subject of the aiding and abetting breach of fiduciary duty claim; and adds A. Nielsen as a defendant to the breach of contract claim. The Ohio FAC asserts federal securities violations against Plaintiffs based on their control over EBTH. In addition, the Ohio FAC further details Plaintiffs' and EBTH's roles in the underlying stock purchase transaction, as well as the relief

---

[47] *Id.* Ex. O at 1.

Light seeks from both Plaintiffs and the Company. Importantly, the Ohio FAC makes new allegations regarding Plaintiffs' acts and omissions in connection with the stock purchase transaction, and alleges that, at every step of the transaction, Plaintiffs acted as agents of each other and EBTH. The parties agreed the Ohio FAC affects the disposition of this Motion and therefore completed supplemental briefing on June 26.[48]

## II.   ANALYSIS

A motion for summary judgment will be granted if the pleadings and materials submitted to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[49] Advancement proceedings are summary by statute.[50] As such, summary judgment is an efficient and appropriate method to expeditiously resolve advancement disputes because "the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to

---

[48] On June 10, 2019, the Court entered a Stipulation and Proposed Order that directed the parties to submit supplemental briefing about the Ohio FAC. D.I. 43. Also on June 10, EBTH conceded advancement as to the fiduciary duty count in the Ohio FAC. D.I. 44 ¶ 10. On June 14, Plaintiffs filed a Motion for the Entry of Advancement Order for advancement of costs and fees associated with the fiduciary duty count in the Original Ohio Complaint and the Ohio FAC. *Id.* at 1. On June 20, I denied that motion, declining to evaluate fees on the fiduciary duty count until all entitlement issues have been resolved in this matter. D.I. 52.

[49] Ct. Ch. R. 56(c).

[50] *See* 8 *Del. C.* § 145(k).

advancement and the pleadings in the proceedings for which advancement is sought."[51]

There is no genuine dispute of material fact before the Court.[52]  I need only address the following questions:  (1) whether Plaintiffs are parties to the Ohio Action by reason of the fact that they served as EBTH officers or directors and are therefore entitled to advancement as a matter of law, and (2) whether Plaintiffs are entitled to fees-on-fees for bringing this action.[53]  Each count in the Ohio FAC is

---

[51] *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *2 (Del. Ch. Jan. 30, 2004) (quotation omitted).

[52] In briefing, EBTH contended Plaintiffs are not entitled to summary judgment because there is a genuine dispute of material fact as to whether or not Plaintiffs are parties to the Ohio Action by reason of the fact that they served as EBTH officers or directors. D.I. 36 at 2–3.  The disputed application of the "by reason of the fact" standard to undisputed facts does not create a genuine dispute of material fact that precludes summary judgment.  Whether Plaintiffs are parties to the Ohio Action by reason of the fact of their former roles as EBTH officers or directors is a question of law, not fact. *See, e.g., Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005) ("The Court of Chancery properly dismissed [defendant's] 'official capacity' defense as a matter of law in its summary judgment decision."); *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 83, 86 (Del. 1998) (en banc) (resolving the "narrow legal question" of entitlement by analyzing the language of Section 145 and the language of the defendant corporation's indemnification bylaw); *Gentile v. SinglePoint Fin., Inc.*, 787 A.2d 102, 106 (Del. Ch.) ("Where such a mandatory provision exists, the rights of potential recipients of such advancements will be enforced as a contract."), *aff'd*, 788 A.2d 111 (Del. 2001) (per curiam).

At oral argument, EBTH conceded that reasonableness of fees is the only fact in dispute that would preclude summary judgment.  D.I. 40 at 47 [hereinafter "Hearing Tr."] ("[T]here are material facts as to the fees that are alleged.").  That dispute has no bearing on this Motion.  I only address the narrow entitlement issue at this stage; reasonableness of fees will follow, pursuant to the procedures adopted in *Danenberg v. Fitracks, Inc.*, 58 A.3d 991 (Del. Ch. 2012).  *See* D.I. 52.

[53] EBTH also challenges entitlement on the grounds that certain claims in the Ohio Action are not properly alleged and/or are not supported by applicable Ohio and federal

based on Plaintiffs' alleged misrepresentations, omissions, and active concealment of material information, and so I address entitlement generally, rather than on a count-by-count basis.[54] Plaintiffs are entitled to advancement and fees-on-fees, for the reasons that follow.

### A. Advancement

As to advancement, the sole issue presented is whether Plaintiffs are parties to the Ohio Action by reason of the fact that they served as EBTH officers or directors, where the challenged transaction involves their personal sale of stock. Advancement "attract[s] capable individuals into corporate service" by "provid[ing] corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses

law. D.I. 53 at 4–5, 7, 18. EBTH's challenges are misplaced in this advancement case. The Ohio Courts, not this Court, will assess the validity or sufficiency of the allegations in the Ohio Action. For purposes of Plaintiffs' entitlement to advancement, I rely on the allegations in the underlying pleadings, which I must accept as true.

[54] The Ohio FAC supplements the Original Ohio Complaint and best helps the Court "discern the true nature" of the claims in the Ohio Action. *Imbert v. LCM Interest Hldg. LLC*, 2013 WL 1934563, at *6 (Del. Ch. May 7, 2013) (citing *Brown v. LiveOps, Inc.*, 903 A.2d 324, 329 (Del. Ch. 2006)). My holding is supported by the allegations in both the Original Ohio Complaint and the Ohio FAC. EBTH argues that the Court should bifurcate its analysis, considering entitlement under the Original Ohio Complaint separately from entitlement under the Ohio FAC after it became the "operative pleading." D.I. 53 at 19–20. When an amended complaint is filed, the Court has the discretion to look to that complaint to "discern the true nature" of the underlying proceedings and to rely on it to make a determination as to entitlement. *Imbert*, 2013 WL 1934563, at *5–6 (relying on pleadings as a whole and noting importance of the amended complaint in that action); *see also Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at *17 (Del. Ch. May 23, 2008) (relying on the "various complaints" filed in the underlying action to determine if the "by reason of the fact" standard was satisfied). This Court has determined entitlement by looking at the pleadings as a whole, and I will do so here.

20

inevitably involved with investigations and legal proceedings."[55] "The broader salient benefits that the public policy behind [S]ection 145 seeks to accomplish for Delaware corporations will only be achieved if the promissory terms of advancement contracts are enforced by courts even when corporate officials . . . are accused of serious misconduct."[56] Plaintiffs' entitlement to advancement depends on the mandatory advancement provisions in EBTH's Charter and Indemnification Agreements, which incorporate the "by reason of the fact" standard from Section 145 of the DGCL.[57]

An advancement claim arises "by reason of the fact" of a person's corporate status "if there is a nexus or causal connection between any of the underlying proceedings contemplated by Section 145(e) and one's official corporate capacity."[58] "This language has been interpreted broadly, and includes all actions brought against an officer or director for wrongdoing that he committed in his official capacity, and for all misconduct that allegedly occurred in the course of performing his day-to-day managerial duties."[59] The requisite nexus "exists if corporate powers were used or necessary for the commission of the alleged

---

[55] *Tafeen*, 888 A.2d at 211.

[56] *Id.* at 218.

[57] Compl. Ex. A, Art. Tenth, §§ 1, 2; *id.* Ex. B § 5, Ex. C § 5, Ex. D § 5.

[58] *Tafeen*, 888 A.2d at 214.

[59] *Imbert*, 2013 WL 1934563, at *5 (quotation omitted).

misconduct."[60]   The nexus is also established if the underlying claim is "inextricably intertwined" with the actions taken in the plaintiffs' former capacities as officers or directors, such that the plaintiffs would necessarily be required to defend those actions and possibly disprove allegations that they acted improperly in those capacities.[61]

> 1.    **Light Explicitly Challenges Plaintiffs' Conduct As Officers Or Directors Of EBTH.**

By its plain text, the Ohio FAC explicitly and repeatedly challenges Plaintiffs' conduct as EBTH officers and directors.  In alleging that Plaintiffs and EBTH collectively and fraudulently induced Light to purchase EBTH stock, the Ohio FAC emphasizes each Plaintiff's role within EBTH.[62]  The Ohio FAC states:

> At all relevant times, [Plaintiffs] controlled the Company and acted as agents on its behalf and each other as related to [Light's] purchase of stock at issue herein.  As alleged below, each of the [Plaintiffs] was a central and primary participant in [Plaintiffs' and EBTH's] joint action to promote the stock sale at issue to [Light], enter into agreements between [Light], on the one hand, and all three [Plaintiffs], on the other, and to make materially false and/or deceptive financial statements and disclosures provided to [Light] only through the three [Plaintiffs] on behalf of each other and of the Company.[63]

---

[60] *Hyatt v. Al Jazeera Am. Hldgs. II, LLC*, 2016 WL 1301743, at *8 (Del. Ch. Mar. 31, 2016) (quotation omitted).

[61] *Id.* at *9 (alteration omitted) (quoting *Rizk v. Tractmanager, Inc.*, C.A. No. 9073-ML, at 21 (Del. Ch. May 30, 2014) (MASTER'S FINAL REPORT)); *see Davis v. EMSI Hldg. Co.*, 2017 WL 1732386, at *10 (Del. Ch. May 3, 2017).

[62] *See* FAC ¶¶ 5–10.

[63] *Id.* ¶ 11.

22

The Ohio FAC repeatedly alleges Plaintiffs acted on EBTH's behalf and in their roles as EBTH's agents and managers that directed and controlled the Company:

- "Prior to the transaction, on or about December 3, 2016, [Plaintiffs], *acting on behalf of the Company but in furtherance of their collective scheme to defraud*, provided a copy of an EBTH pitch deck that included . . . material financial projection information about the Company."[64]

- "[T]hrough their statements, disclosures, and dealings leading up to the stock transaction, [Plaintiffs] were speaking and making statements *on behalf of each other and on behalf of the Company* and acting in their roles as agents of the Company and management principals thereof who directed and controlled Company policy."[65]

- "The December 10, 2016 Email was sent to Mark Sullivan and Ellen Schubert by A. Nielsen *on behalf of all of* [*Plaintiffs and EBTH*], who were referenced as 'we' therein . . . ."[66]

- "[*Plaintiffs and EBTH*] next provided a December 19, 2016 email sent to Mark Sullivan by A. Nielsen from his Company email *on behalf of all of* [*Plaintiffs and EBTH*], again referenced as 'we' therein . . . ."[67]

- "In a December 22, 2016 email to Mark Sullivan, sent from a Company email address *on behalf of* [*Plaintiffs and EBTH*], A. Nielsen again described the proposed transaction as a 'Founder's Stock Offering' to sell up to 2,950,000 shares of common stock owned at that time by the principals of the Company . . . ."[68]

---

[64] *Id.* ¶ 20 (emphasis added).

[65] *Id.* ¶ 31 (emphasis added).

[66] *Id.* ¶ 33 (emphasis added).

[67] *Id.* ¶ 39 (emphasis added).

[68] *Id.* ¶ 41 (emphasis added).

23

- "In response to this specific inquiry concerning the Company's 2016 and 2017 expenses, operations, and profitability, A. Nielsen sent a January 3, 2017 email *from his Company email address and on behalf of* [*Plaintiffs and EBTH*], again referenced as 'we' therein . . . ."[69]

- "Moreover, *given the extent of* [*Plaintiffs'*] *respective roles with the Company, and their actions on its behalf* exposing it and themselves to Section 10(b) liability, [Plaintiffs and EBTH] knowingly made the above-stated false statements and/or omissions of material fact in conflict with their duties to disclose arising from the NDA . . . ."[70]

- "Moreover, *as the issuer of the stock on behalf of whom the statements and omissions were made under the NDA*, and as the controlling persons who participated in both the disclosure process and the stock transaction, each of the Company and [Plaintiffs] had the opportunity to engage in the deceptive schemes, statements, and practices to which [Light] was exposed and by which it was deceived and induced into purchasing Company stock."[71]

- "*Given the extent of* [*Plaintiffs'*] *respective roles with the Company, and their actions on its behalf*, [Plaintiffs and EBTH] knowingly made the above-stated material false statements and/or omissions of material fact."[72]

- "[Plaintiffs], *through their independent conduct and their control of the Company*, combined and agreed between them to engage in concerted action and through an improper scheme and practice designed to defraud and induce [Light] to sign the Common Stock Purchase Agreement and to purchase shares of the Company."[73]

---

[69] *Id.* ¶ 45 (emphasis added).

[70] *Id.* ¶ 95 (emphasis added).

[71] *Id.* ¶ 98 (emphasis added).

[72] *Id.* ¶ 109 (emphasis added).

[73] *Id.* ¶ 135 (emphasis added).

- "[Plaintiffs], *through their independent conduct and their control of the Company*, willfully, maliciously, and with reckless indifference caused harm to [Light] . . . ."[74]

- "[Light] brings this claim as a shareholder for [Plaintiffs'] breach of their fiduciary duties owed to the Company and resulting from their provision of false and inaccurate information *on behalf of the Company but in the furtherance of their individual sales of Company stock* . . . ."[75]

- "*By virtue of their positions as members of the Company's Board, and/or officers of the Company*, [Plaintiffs] owed fiduciary duties as set forth and alleged herein above."[76]

Light's claims are "brought against [each] officer or director for wrongdoing that he committed in his official capacity."[77] Plaintiffs will be required "to defend their actions as officers and directors of the Company"[78] and possibly disprove allegations that they acted improperly in those capacities in the Ohio Action.[79] This is sufficient to satisfy the "by reason of the fact" standard.

### 2. Plaintiffs Accessed And Misused Confidential EBTH Information By Virtue Of Their Roles With EBTH.

Plaintiffs are also entitled to advancement because the Ohio FAC alleges Plaintiffs accessed and shared (or purposefully withheld) EBTH's confidential financial information by reason of the fact that they served the Company.

---

[74] *Id.* ¶ 137 (emphasis added).

[75] *Id.* ¶ 140 (emphasis added).

[76] *Id.* ¶ 152 (emphasis added).

[77] *Imbert*, 2013 WL 1934563, at *5 (quotation omitted).

[78] *Davis*, 2017 WL 1732386, at *10.

[79] *Rizk*, C.A. No. 9073-ML, at 22–23.

"[W]here the claims asserted against a defendant in an action are based on the misuse of confidential information that the defendant learned in his or her official corporate capacity, that action qualifies as being asserted 'by reason of the fact' of that corporate capacity."[80] Advancement is appropriate if the "[t]he gravamen of the underlying complaint is that [the plaintiff] had access to proprietary information by reason of the fact that he was a director and officer of [the defendant] and that he wrongly used that information for his personal benefit."[81] The relevant inquiry "is into whether the [wrongful] scheme is alleged to have employed the corporate powers (or, for example, confidential inside information acquired through the corporate status) conferred upon the officer by virtue of his status."[82]

The Ohio FAC alleges that Plaintiffs were able to share false, misleading, or incomplete EBTH information because they were Company "insiders" with authority to control EBTH's financial narrative.[83] Through the NDA, EBTH explicitly authorized Plaintiffs to share the Company's confidential and proprietary

---

[80] *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1052 (Del. Ch. 2014); *see also Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411, at *9 (Del. Ch. Dec. 23, 2014).

[81] *Brown*, 903 A.2d at 330.

[82] *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *7 (Del. Ch. May 3, 2002).

[83] FAC ¶¶ 19, 38, 53, 67, 69–70, 97.

26

information in relation to the stock purchase transaction with Light, through SLC.[84]

The Ohio FAC alleges that, pursuant to the NDA,

> all contacts, requests, and discussions with EBTH Inc. and its advisors and agents regarding any potential investment in the Company's stock or other transaction with the Company were to occur only through the Principals of the Company (*including and limited to specifically to Andy Nielsen, Jon Nielsen, Mike Reynolds or Chip Nielsen*), who were specifically identified as its agents and controlling "Principals" and were thereby, without limitation, acting as express and apparent agents of the Company and of each other in connection with the transactions contemplated by the NDA and their statements and representations related thereto.[85]

A. Nielsen signed the NDA as EBTH's CEO.[86]  Under the NDA, EBTH permitted Light to communicate about the Company's finances solely with Plaintiffs and Chip Nielsen (who Plaintiffs allegedly controlled).  Plaintiffs spoke (or failed to speak) to Light in their roles as EBTH "Principals."

So empowered, Plaintiffs allegedly provided Light with false information. Because they controlled EBTH's financial records, Plaintiffs were able to prepare and provide Light with documents that included false information, omitted material information, and misrepresented, among other things, that EBTH had favorable

---

[84] The Ohio FAC alleges Plaintiffs owed Light the duty to speak fully and truthfully under several sources: the NDA (*id.* ¶¶ 95, 98, 115, 125–126, 143); the SPA (*id.* ¶¶ 158, 160); state and federal security laws, because Plaintiffs were controlling persons or issuers of stock (*id.* ¶¶ 93, 95, 107, 109); and fiduciary duties stemming from Plaintiffs' roles as EBTH officers or Board (*id.* ¶¶ 140–41, 152–54).

[85] *Id.* ¶ 29 (emphasis added).

[86] *Id.* ¶ 30.

projections for 2016.[87]  As insiders, Plaintiffs "deliberately provided only selected information" and knew that the information they provided did not reflect EBTH's true financial state.[88]

For example, Plaintiffs provided Light with an EBTH pitch deck.[89]  A. Nielsen allegedly sent the pitch deck on behalf of EBTH and the other Plaintiffs. He sent it "from his Company email account and bearing the signature block of A. Nielsen as Chief Executive Officer of the Company."[90]  The email was "copied to J. Nielsen at his Company email address, and the EBTH pitch deck itself [was] marked on every page with the name and logo of the Company."[91]

Plaintiffs subsequently provided Light with additional information that was consistent with the pitch deck, but did not reflect the Company's true financial condition.[92]  In crafting the financial statements they shared with Light, Plaintiffs purposefully removed key information from spreadsheets.[93]  Plaintiffs allegedly concealed that the Company completed a reforecast in early October 2016 and

---

[87] *See id.* ¶¶ 35, 37–38, 47–48, 59–60, 62–67, 69–70.

[88] *Id.* ¶ 49.

[89] *Id.* ¶ 20.

[90] *Id.* ¶ 23.

[91] *Id.*

[92] *See id.* ¶¶ 33, 38, 41, 60.

[93] *See, e.g., id.* ¶¶ 37, 46–48, 61–64, 66.

failed to disclose that information in order to remedy previous inconsistent statements.[94]

In emails, Plaintiffs leveraged their insider status, directing Light to "pay most attention" to false, misleading, or incomplete information in documents that Plaintiffs controlled.[95] Plaintiffs represented that the documents and other written representations provided the Company's "most current" information before the Founder's Stock Offering.[96] This was not the case.[97]

> All of the foregoing projections, financial assessments, and representations *were made by insiders, engaged in the management of the Company, who had complete[] access to and responsibility for the Company's financial projections and reporting, who were knowledgeable regarding the accurate information at the time that inaccurate projections were provided to [Light], and who failed to provide updated and corrected information to [Light] (including through the apparent adulteration of financial documents) during the ongoing communications of the parties prior to the closing of the stock sale transaction. . . .* Thus, the facts show that [Plaintiffs and EBTH], as corporate insiders and participants in the stock transaction, acted through a knowing and deliberate scheme to induce [Light] to purchase Company stock from them in a reckless and highly unreasonable manner given their positions as informed insiders who were presenting a false narrative and statement of the Company's financial condition and failing to update and correct that deceptive depiction.[98]

---

[94] *See id.* ¶¶ 35, 38, 47–48, 60, 63–65.

[95] *See id.* ¶¶ 33, 36, 38.

[96] *Id.* ¶¶ 39–41.

[97] *See id.* ¶¶ 48, 57–68, 71, 74, 76.

[98] *Id.* ¶¶ 69–70 (emphasis added).

Light relied on Plaintiffs' information and trusted its accuracy because they were Company insiders.[99]    Because the NDA limited Light's sources of information to Plaintiffs and one other insider, Light had no way of knowing that the information Plaintiffs provided was false.[100]

Advancement is appropriate because the "gravamen" of the Ohio FAC is that Plaintiffs misused proprietary EBTH information, which they accessed, filtered, and distributed by reason of the fact that they were directors or officers of the Company.[101]  Plaintiffs were Principals of EBTH under the NDA "by reason of the fact" of their roles at EBTH, and therefore are parties to the Ohio Action by reason of that fact as well.[102]  Plaintiffs will need to defend Light's claims that, while acting on EBTH's behalf, they provided Light with false or misleading information, knew the information was false or misleading, and could have corrected any false or misleading statements by virtue of their roles with the Company.    Light's allegations that Plaintiffs misused "confidential inside

---

[99] *See id.* ¶¶ 68–70, 87, 99, 110, 117, 128.

[100] *See id.* ¶¶ 68–71, 98–99, 109–10, 118, 125, 128–29.

[101] *See Brown*, 903 A.2d at 330; *see also Sider v. Hertz Global Hldgs., Inc.*, C.A. No. 2019-0237, at 58 (Del. Ch. May 14, 2019) (TRANSCRIPT) ("It is difficult to think of a less personal task than preparing a corporation's financial statements or a task more deeply tied to the use of corporate powers.").

[102] EBTH argues that the NDA did not create a duty to disclose and will not be dispositive in the Ohio Action.  D.I. 53 at 16–17.  As mentioned, that argument on the merits must be made in the Ohio Action.  *See supra* note 53.  Light alleged that the NDA created a duty on behalf of EBTH and Plaintiffs as principals of EBTH. *See, e.g.*, FAC ¶ 95.  I accept those allegations as true in this action.

information acquired through the corporate status" satisfy the "by reason of the fact" standard.[103]

### 3. Plaintiffs Are Entitled To Advancement Even If They Entered Into The SPA In Their Personal Capacities.

The SPA governed Plaintiffs' sale of their personal stock. According to EBTH, Plaintiffs' actions were purely personal and do not establish a nexus to conduct taken in their official capacities because the Company was not formally involved in the stock purchase transaction, and because Plaintiffs, not EBTH, benefitted from the transaction. EBTH alleges that Light is a "complete legal stranger" to the Company because EBTH was not a party to the SPA and because SLC, not Light, entered into the NDA.[104] Relying on the belief that the Company was far removed from the transaction, EBTH contends that advancement is improper because the Ohio Action only implicates Plaintiffs' personal contractual obligations.[105] I disagree.

Advancement rights do not attach "when the parties are litigating a specific and personal contractual obligation that does not involve the exercise of judgment,

---

[103] *Perconti*, 2002 WL 982419, at *7.

[104] D.I. 53 at 17; D.I. 36 at 6, 23.

[105] D.I. 53 at 11–12; *see also* D.I. 36 at 14–15.

discretion, or decision-making authority on behalf of the corporation."[106]  "When a corporation seeks to avoid an officer's demand for advancement on the ground that the claim the officer is defending is not an advanceable claim, in order to prevail, the claim at issue must clearly involve a specific and limited contractual obligation without any nexus or causal connection to official duties."[107]  This is a difficult standard, and the Court will favor advancement if "[t]he claims in the underlying action are not nearly so limited."[108]

The Delaware Supreme Court has directed an expansive approach when assessing the capacity in which a party seeking advancement entered into an agreement.[109]  Advancement will be appropriate where the collective pleadings and papers demonstrate that the underlying allegations "are not merely allegations that Plaintiffs have breached specific contractual terms personal to them."[110]  This may be true even where the former officer or director was acting in her personal capacity as a seller when making certain representations and warranties, where the

---

[106] *Hyatt*, 2016 WL 1301743, at *8 (quotation omitted); *see also Weaver*, 2004 WL 243163, at *3 ("'[B]y reason of the fact' is not construed so broadly as to encompass every suit brought against an officer and director.").

[107] *Davis*, 2017 WL 1732386, at *10 (quotation omitted).

[108] *Id.*

[109] *VonFeldt*, 714 A.2d at 85 ("In keeping with the aversion to undue formalism, we decline to engage in the hyper-technical exercise of trying to measure the 'scope' of Stifel Financial's request against the various roles VonFeldt filled at SNC.  Stifel Financial was surely aware that, in today's corporate world, directors will commonly extend their official activities beyond the four walls of the boardroom.").

[110] *Davis*, 2017 WL 1732386, at *10.

former director or officer was not formally acting on behalf of the corporation when the wrongful act occurred, and where the underlying transaction did not involve the corporation.[111] The fact that the director or officer's conduct was motivated by greed or personal gain will not preclude advancement.[112]

Although EBTH was not a party to the SPA, the Ohio FAC alleges that by entering into the NDA with SLC, EBTH anointed Plaintiffs as exclusive sources of confidential Company information to support the SPA. As Principals under the NDA, Plaintiffs exercised their judgment, discretion, or decision-making authority on EBTH's behalf when they shared confidential Company information with Light. The Ohio FAC sufficiently demonstrates that Plaintiffs' roles as EBTH Principals were inextricably intertwined with their roles as sellers pursuant to the SPA.

The fact that Plaintiffs entered into the SPA as individual sellers and not in their formal capacities as officers and directors of the Company is not dispositive. Then-Master LeGrow granted advancement where a corporate insider entered into

---

[111] *See*, *e.g.*, *id.* (noting plaintiffs were sued for breaching personal representations in a stock purchase agreement); *Rizk*, C.A. No. 9073-ML, at 21 (noting plaintiff was sued "in his capacity as a seller"); *Pontone*, 100 A.3d at 1050 (noting plaintiff was not affiliated with the company as an officer or director at the time the misconduct occurred); *Brown*, 903 A.2d at 324 (noting company sued plaintiff and indicating company was not a party to transaction where plaintiff "wrongfully misappropriated the corporation's confidential information and used it in forming a competing enterprise").

[112] *Tafeen*, 888 A.2d at 214 (noting case law "reflects a consistent line of authority upholding the contractual and statutory advancement and indemnification rights of corporate officials charged with serious misconduct allegedly inspired by personal greed" (quotation omitted)).

a transaction as an individual seller and was later sued for breaching representations and warranties made in that capacity. In *Rizk v. Tractmanager, Inc.*, a former CEO was sued for breach of contract from alleged misrepresentations in the underlying Merger Agreement.[113] The company argued that the CEO was not entitled to advancement because the representations were made in his capacity as a seller, not as CEO.[114] In particular, the defendant argued that the sellers "made a series of representations and warranties in the Merger Agreement, placed money and equity in escrow to cover potential indemnification liabilities associated with breaches of those representations and warranties, and that those escrowed funds are the subject of the breach of contract claim."[115] Master LeGrow rejected this argument and granted advancement because the breach of contract claim was "inextricably [] intertwined" with actions taken in plaintiff's former capacity as CEO.[116]

---

[113] *Rizk*, C.A. No. 9073-ML, at 20–21. After then-Master LeGrow issued her final report, the *Rizk* defendants filed a Notice of Exceptions to the final report. *See Rizk* D.I. 52. The action was then assigned to a Vice Chancellor for the purpose of hearing the exceptions to the final report. *See Rizk* D.I. 53. Before the Court had the opportunity to address those exceptions, the parties stipulated to dismissal with prejudice. *See Rizk v. Tractmanager, Inc.*, 2014 WL 5788767 (Del. Ch. Nov. 5, 2014) (granting stipulation of dismissal with prejudice). The final report was never adopted by the Court.

[114] *Rizk*, C.A. No. 9073-ML, at 21.

[115] *Id.* at 20–21 (internal quotation marks omitted).

[116] *Id.* at 21.

I am persuaded by the analysis in *Rizk*. EBTH's argument to the contrary "would place a narrow reading on the 'by reason of the fact' standard, a standard this Court consistently interprets broadly and in favor of advancement."[117] While Plaintiffs entered into the SPA in their personal capacities, the Company supported the transaction, and Plaintiffs allegedly used their Company status to misrepresent EBTH's confidential information for their personal gain. EBTH has failed to show that Light's claims "clearly involve a specific and limited contractual obligation without any nexus or causal connection to official duties."[118]

Relatedly, EBTH argues that Plaintiffs did not misuse their corporate powers because they could have breached their contractual obligations under the SPA even if they were never EBTH officers or directors.[119] EBTH "cites no authority in support of its argument that this inquiry should turn on whether a non-officer employee could engage in the wrongdoing alleged in the complaint, and such a rule appears inconsistent with the summary nature of advancement proceedings and the record typically considered by the Court in resolving these disputes."[120]

---

[117] *Id.* at 17–18 (citing *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *6–7 (Del. Ch. May 30, 2008)).

[118] *Davis*, 2017 WL 1732386, at *10 (quotation omitted).

[119] D.I. 36 at 16–18.

[120] *Rizk*, C.A. No. 9073-ML, at 17.

35

In *Rizk*, then-Master LeGrow rejected this position because it "would place a narrow reading on the 'by reason of the fact' standard"[121] and "would create an artificial distinction in which advancement was dependent on whether the conduct at issue in the underlying complaint was conduct in which *only* an officer could engage."[122] "This distinction is particularly ill-fitted in this case" because according to the FAC, Plaintiffs served as EBTH officers or directors at all times relevant to the stock purchase transaction.[123] Accepting EBTH's argument would impermissibly require the Court "to undertake fact-finding outside the limited inquiry typically involved in an advancement dispute."[124]

The Ohio FAC asserts Plaintiffs breached the SPA because they were able to access and misuse EBTH's confidential information by virtue of their positions with the Company. EBTH's proposed thought exercise, which asks this Court to consider whether Plaintiffs hypothetically could have accessed Company information and misused it in breach of the SPA if they had not served in their respective roles with EBTH, is not sanctioned by Delaware law and does not preclude advancement.

---

[121] *Id.*

[122] *Id.* at 18 (emphasis in original).

[123] *Id.*

[124] *Id.*

**4. The Nature of the Underlying Claims Does Not Preclude Advancement.**

Finally, EBTH argues that advancement is inappropriate because certain claims in the Ohio Action—specifically the breach of contract and unjust enrichment claims—are not premised on Plaintiffs' fiduciary duties to the Company, as evidenced by the fact that the claims seek rescission as a remedy.[125] The "by reason of the fact" standard can be met even where the cause of action does not specify a breach of fiduciary duty, if "the conduct that is alleged to be a breach of the SPA is the same conduct through which Plaintiffs are alleged to have misused their corporate powers."[126]

Here, the Ohio FAC presents a "quintessential" fiduciary duty claim for which EBTH has conceded advancement.[127] That claim is premised on the same conduct that underlies the other claims in the Ohio FAC. As such, those claims "all could be seen as fiduciary allegations" because they involve the charge that

---

[125] *See* D.I. 53 at 4–8; D.I. 36 at 24–25.

[126] *Davis*, 2017 WL 1732386, at *9 (distinguishing *Cochran v. Stifel Fin. Corp.*, 2000 WL 1847676 (Del. Ch. Dec. 13, 2000), *aff'd in part, rev'd in part*, 809 A.2d 555 (Del. 2002)); *see also Pontone*, 100 A.3d at 1051.

[127] *See* Hearing Tr. at 5, 31–32, 42; *see also Zaman*, 2008 WL 2168397, at *17 ("In considering whether a corporate official faces an official capacity claim, the key inquiry is whether the claim depends on a showing that the official breached duties, quintessentially fiduciary duties, he owed to the corporation in that capacity or faces liability from a third party due to actions taken in his official capacity.").

Plaintiffs failed to live up to their duties of loyalty and care to the corporation.[128] For example, Light alleges that Plaintiffs owed fiduciary duties by virtue of their positions with the Company, and that Plaintiffs "acted contrary to their fiduciary duties to the Company when they provided materially inaccurate and/or incomplete financial information to [Light] . . . and exposed the Company to resulting liability."[129] The Ohio FAC's claims are "grounded in [Plaintiffs'] alleged misuse of the substantial fiduciary responsibility they were given as key managerial agents" generally and under the NDA.[130] The Ohio FAC's allegations, "couched as breaches of representations and warranties in the SPA, are not merely allegations that Plaintiffs have breached specific contractual terms personal to them. Instead, Plaintiffs will be required to defend their actions as officers and directors of the Company and their alleged intentional abuse of their corporate powers."[131]

## B. Fees-on-Fees

Plaintiffs are entitled to fees-on-fees in prosecuting this action. "Plaintiffs who successfully prosecute an advancement suit are generally entitled to an appropriate award of fees for the expenses incurred in litigating the suit, unless the

---

[128] *Reddy v. Elec. Data Sys. Corp.,* 2002 WL 1358761, at *6 (Del. Ch. June 18, 2002); *see also* FAC ¶¶ 141–46.

[129] FAC ¶ 144.

[130] *Davis*, 2017 WL 1732386, at *9 (quotation omitted).

[131] *Id.* at *10.

parties have agreed otherwise."[132] Here, the parties have not agreed otherwise. The Charter and Indemnification Agreements grant Plaintiffs broad rights to expenses in prosecuting an advancement suit.

Plaintiffs rely primarily on the Charter for fees-on-fees proportional to their success, as the Indemnification Agreements' unconditional fees-on-fees grant is too broad.[133] Section 7(d) of the Indemnification Agreements entitles Plaintiffs to fees-on-fees "regardless of whether Indemnitee ultimately is determined to be entitled to such . . . advancement of expenses."[134] In *Levy v. HLI Operating Company, Inc.*, Vice Chancellor Lamb invalidated a provision allowing for fees-on-fees regardless of whether the plaintiff was successful in bringing the advancement action.[135] The Court held that such provisions are contrary to public policy and void as a matter of law.[136] Having voided the provision, the Court

---

[132] *Thompson v. Orix USA Corp.*, 2016 WL 3226933, at \*7 (Del. Ch. June 3, 2016).

[133] In their brief, Plaintiffs recognized that provisions such as Section 7(d) of the Indemnification Agreements "have been ruled void under Delaware law," citing *Levy v. HLI Operating Co.*, 924 A.2d 210 (Del. Ch. 2007). D.I. 37 at 25 n.14. But at oral argument, Plaintiffs argued that *Levy* left open the possibility of full indemnification for partial success, and requested full indemnification under Section 7(d) in view of Defendants' concession of advancement on the fiduciary duty claim. Hearing Tr. at 31–32. I do not reach that issue because Plaintiffs succeeded, in whole, on their Motion.

[134] Compl. Ex. B § 7(d), Ex. C § 7(d), Ex. D § 7(d).

[135] *See Levy*, 924 A.2d at 225–27.

[136] *See id.* at 226 ("[S]ection 145 . . . is best read as limiting a corporation's power to indemnify fees on fees to those situations where success is achieved on the underlying claim. . . . [A]llowing a contractual provision such as the one in [this case] to stand contravenes notions of sound public policy previously noted by this court.").

explained that the plaintiffs were still entitled to fees in proportion to the extent of their success in bringing the action.[137]

EBTH's Charter grants Plaintiffs appropriately proportional fees: "if successful in whole or in part, [Plaintiffs] shall be entitled to be paid the expense of prosecuting such claim."[138] Plaintiffs are entitled to fees-on-fees in an amount proportional to their success in this action. Because Plaintiffs succeeded in full on their Motion, they are entitled to reimbursement of their legal fees and expenses incurred in this litigation.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED. The Plaintiffs are entitled to advancement of expenses and fees in the Ohio Action and fees-on-fees incurred in bringing this action. The parties shall submit a stipulated form of order within ten days of this opinion imposing the

---

[137] *Id.* at 225–26 ("A contractual agreement for indemnification of fees on fees, then, cannot overstep this bright-line legal boundary. A party must succeed (at least to some extent) on its underlying indemnification action to have a legally cognizable claim for monies expended in forcing its indemnitor to make it whole."); *id.* at 227 ("For these reasons, the provision found in section 4 of the indemnification agreements which purports to require Old Hayes to indemnify the plaintiffs for fees and expenses incurred in this action regardless of their success on the merits is invalid. . . . Any fees and expenses advanced to Christophe and Witt are subject, in an inverse proportion to the level of success they ultimately achieve in this case, to a right of recovery by Old Hayes." (footnotes omitted)).

[138] Compl. Ex. A, Art. Tenth, § 3.

framework detailed by this Court in *Danenberg v. Fitracks, Inc.*,[139] which shall govern the submission of further requests for advancement and the prompt resolution of any disputes that arise regarding such requests.

---

[139] *Fitracks, Inc.*, 58 A.3d at 1001–03.